EXHIBIT "A"

# THE COURT OF COMMON PLEAS, CIVIL DIVISION
## CUYAHOGA COUNTY, OHIO
Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

MELVIN RAY
**Plaintiff**

V.

BREE W. OGLE, ET AL
**Defendant**

**CASE NO.** CV22964486

**JUDGE** WANDA C JONES

# SUMMONS  SUMC  CM

**Notice ID:** 47790545

| From: | MELVIN RAY | P1 |
| | 1360 CLEVELAND HEIGHTS BLVD. | |
| | CLEVELAND HEIGHTS OH 44121 | |

| Atty.: | SUSAN M GRAY |
| | OHIO SAVINGS BANK BUILDING |
| | 22255 CENTER RIDGE RD. SUITE106 |
| | ROCKY RIVER, OH 44116-0000 |

| To: | BREE W OGLE | D1 |
| | ATKINS & OGLE LAW OFFICES, LLC | |
| | 105 RIVER VISTA DRIVE | |
| | BUFFALO WV 25033 | |

### NOTICE TO THE DEFENDANT:

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff. You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.us/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.

RECEIVED
JUN 17 REC'D
ATKINS & OGLE

**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**



**Date Sent:** 06/10/2022

By_____
**Deputy**

Brenda Aldrige

CMSN130



# Cuyahoga County Clerk of Courts
## Nailah K. Byrd

**Multilingual Notice:**

You have been named as a defendant in this Court. You must file an answer within 28 days; if you fail to answer, the Court may enter judgment against you for the relief stated in the Complaint. Seek assistance from both an interpreter and an attorney. Your inability to understand, write, or speak English will not be a defense to possible judgment against you.

1. **Spanish (US)**
   ***Aviso multilingüe:**

   Este Tribunal lo ha declarado como acusado. Debe presentar una respuesta en un plazo de 28 días. Si no contesta en dicho plazo, el Tribunal podrá dictar sentencia en su contra por el amparo que se detalla en la demanda. Solicite la ayuda de un intérprete y de un abogado. Su incapacidad para comprender, escribir o hablar inglés no se considerará como defensa ante una posible sentencia en su contra.

2. **Somali**
   ***Ogeysiis luqadda badan ah:**

   Waxaa lagu magacaabay sida eedeysane gudaha Maxkamadan. Waa in aad ku soo gudbisaa jawaab 28 maalmood gudahood; haddii aad ku guuldareysto jawaabta, Maxkamada laga yaabo in ay gasho xukun adiga kaa soo horjeedo ee ka nasashada lagu sheegay Cabashada. Raadi caawinta ka timid labadaba turjubaanka iyo qareenka. Karti la'aantaada aad ku fahmo, ku qoro, ama ku hadasho Af Ingiriisiga ma noqon doonto difaacida xukunkaaga suuralka ah ee adiga kugu ildka ah.

3. **Russian**
   ***Уведомление на разных языках:**

   Вы были названы в качестве ответчика в данном суде. Вы должны предоставить ответ в течение 28 дней; если Ваш ответ не будет получен, суд может вынести решение против Вас и удовлетворить содержащиеся в жалобе требования. Воспользуйтесь услугами переводчика и адвоката. Тот факт, что Вы не понимаете английскую речь и не можете читать и писать по-английски, не является препятствием для возможного вынесения судебного решения против Вас.

4. **Arabic**
   ***ملاحظة متعددة اللغات:**

   لقد تم اعتبارك مدعى عليه في هذه المحكمة. يجب أن تقدم ردا خلال 28 يوما؛ وإذا لم تقم بالرد، فقد تصدر المحكمة حكما ضدك بالتعويض المنصوص عليه في هذه الشكوى القضائية. اطلب المساعدة من مترجم فوري ومحام. فلن تعد عدم قدرتك على فهم اللغة الإنجليزية أو كتابتها أو تحدثها دفاعا لك أمام الحكم المحتمل ضدك.

5. **Chinese (Simplified)**
   ***多語版本通知：**

   您在本法庭已被列为被告。您必须于 28

   日内递交答辩状；如果没有递交答辩状，法庭会针对诉状中声明的补救措施对您作出不利判决。请向口译人员和律师寻求帮助。您无法理解、书写或说英语的情况不能作为对您可能作出不利判决的辩护理由。

Justice Center, 1st Floor • 1200 Ontario Street • Cleveland, Ohio 44113-1664 • 216.443.7950

Ohio Relay Service 711 • Website: coc.cuyahogacounty.us



### NAILAH K. BYRD
## CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

### New Case Electronically Filed: COMPLAINT
### June 8, 2022 16:35

By: SUSAN M. GRAY 0062356

Confirmation Nbr. 2571473

| | |
|---|---|
| MELVIN RAY | CV 22 964486 |
| vs. | |
| BREE W. OGLE, ET AL | **Judge:** WANDA C. JONES |

**Pages Filed:** 39

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| Melvin Ray<br>1360 Cleveland Heights Blvd.<br>Cleveland Heights, OH 44121 | )<br>) **CASE NO:**<br>)<br>) |
| **Plaintiff** | )<br>) |
| **vs.** | )<br>) |
| Bree W. Ogle<br>Atkins & Ogle Law Offices, LC<br>105 River Vista Drive<br>Buffalo, WV 25033 | )<br>)<br>)<br>)<br>) |
| **And** | )<br>) |
| Atkins & Ogle Law Offices, LC<br>c/o Amy G. Clack<br>2288 Barnett Drive<br>Bellbrook, OH 45305 | )<br>) **CLASS ACTION COMPLAINT**<br>) JURY DEMAND ENDORSED HEREON<br>)<br>) |
| **Defendants.** | ) |

1. This is an action for damages and other relief by Melvin Ray. Mr. Ray brings this Complaint, on his own behalf and on behalf of others similarly situated, for violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, et seq., ("FDCPA"), the Ohio Consumer Sales Practices Act, Ohio Revised Code 1345.01 et seq. ("OCSPA"), fraud, abuse of process, malicious prosecution, coercion, theft, subornation of perjury and falsification, and for any other right to relief to which Mr. Ray is entitled based on the facts stated, on information and belief, in this complaint.

2. Mr. Ray is an individual resident of Ohio and a "Consumer" as defined in the Ohio Consumer Sales Practice Act, R.C. § 1345.01(D), and in 15 U.S.C. 1692a (3).

3. At all times pertinent to this case, Mr. Ray resided at 1360 Cleveland Heights Blvd, Cleveland Heights, OH 44121.

4. Atkins & Ogle Law Offices, LC (hereafter "AOLO") is a debt collector.

5. AOLO describes its business on its website as: "Since 1981 our firm has represented and assisted national and local creditor clients in the recovery of delinquent accounts. We have recently invested in infrastructure, technology, and industry-leading policies and procedures and are able to handle comprehensive recovery matters utilizing the legal structure in both West Virginia and Ohio."

6. The "comprehensive recovery matters utilizing the legal structure" in Ohio include, but are not limited to, the filing of a complaint with the purpose to prompt official actions such as a judgment on the debt, and execution on the judgment through other official acts such as wage garnishment, bank attachment, judgment liens and filing claims to obtain payments in bankruptcy cases.

7. AOLO's website further states that it has "been serving ... the state of Ohio since 2015."

8. AOLO is registered with the Ohio Secretary of State as a foreign limited liability company.

9. Bree W. Ogle ("Ogle") is a member, director, officer or employee of AOLO.

10. On June 11, 2021, Ogle and AOLO filed a case against Mr. Ray in the Court of Common Pleas, Cuyahoga County, as Case No. CV-21-948648 ("Collection Case"). A copy of the complaint ("Collection Complaint") is attached as Exhibit 1 hereto.

11. Ogle signed and caused to be filed in the Cuyahoga County Court of Common Pleas the Collection Complaint.

12. Ogle's signature on the Complaint constituted a certificate that she had read the Complaint; and that to the best of her knowledge, information and belief there was good ground to support it.

13. Defendants knew at the time that the Complaint was filed that Defendants did not have good ground to support the Complaint.

14. The filing of the Complaint with the knowingly false certificate was a false statement in writing knowingly made of a material fact in an official proceeding designed to make use of the court to obtain a judgment by deception to mislead judges to deprive Mr. Ray and others of their property without their consent for the purpose of executing on that judgment to deprive Mr. Ray of his property through bank attachments and a judgment lien, and his income through wage garnishments.

15. The Complaint against Mr. Ray was a claim of indebtedness filed with a court of record

16. The benefits sought by the knowingly false Collection Complaints, such as judgments and use of the courts and public officials to execute on those judgments, were valuable benefits to Defendants.

17. The Collection Complaint initiated an official proceeding in the Cuyahoga County Court of Common Pleas.

18. In response to the Collection Complaint, Mr. Ray retained an attorney and paid $1,500.00 in fees for the representation.

19. In furtherance of their scheme to obtain money from Mr. Ray by means of false representations, Defendants filed the Collection Complaint and subsequent motions by electronic means in interstate commerce through the electronic mechanism provided by the court through the court's electronic case filing system.

20. In furtherance of their scheme to obtain money from Mr. Ray by means of false representations, Defendants used the United States Mail in interstate commerce to cause service of the Collection Complaint, motions and other correspondence to be made upon Mr. Ray.

21. In furtherance of their scheme to obtain money from Mr. Ray by means of false representation, Defendants used the United States Mail in interstate commerce to demand payment from Mr. Ray in excess of $30,000.00.

22. The debt that was alleged in the Collection Complaint was incurred primarily for personal, family, or household purposes.

23. The Collection Case was dismissed with prejudice on October 28, 2021.

24. Each of the Defendants are engaged in a business the principal purpose of which is the collection of debts, or they regularly collect or attempt to collect debts owed or due or asserted to be owed or due to others.

25. Each of the Defendants, because of their debt collection activities, is a "debt collector" as described in 15 U.S.C. § 1692a (6).

26. Each of the Defendants, because of their debt collection activities, is a "supplier" as defined in Ohio R.C. § 1345.01(C) and similar consumer protection statutes.

27. Each Defendant regularly takes direct or indirect individual actions to collect "debt" that is described in 15 U.S.C. § 1692a (5).

28. Each action of Defendants that is the subject of this Complaint is an attempt to collect a consumer debt which is subject to the FDCPA.

29. Each action of Defendants that is the subject of this Complaint is a "Consumer Transaction" as defined in Ohio R.C. §1345.01(A) and similar consumer protection statutes.

30. Defendants acting individually and collectively, as a joint venture, made and caused to be made false statements and committed other deceptive or unconscionable acts that are the subject of this complaint in an attempt to collect a consumer debt from Mr. Ray and other Ohio Consumers who are similarly situated.

31. In June of 2021, Mr. Ray was attempting to retire.

32. In order to retire he needed to refinance his mortgage loan.

33. On June 6, 2021 Mr. Ray was in the process of applying for a mortgage loan through New Day, USA ("New Day") a company that specializes in obtaining loans for veterans.

34. Mr. Ray's ability to retire depended on getting a mortgage loan refinance.

35. Mr. Ray spent money and time to meet the qualification demands of New Day, for example, he assembled substantial documents and spent $75.00 to have them faxed from FedEx Kinkos to the New Day offices; he obtained and paid for an appraisal costing over $100.00; and paid over $300.00 for a required pest inspection.

36. On June 11, 2021 AOLO filed the collection complaint.

37. On June 15, 2021 New Day sent Mr. Ray an e-mail titled "title findings" which included, under the category "Judgments/Liens," specific reference to the Collection Complaint, showing as the balance due $30,198.93, the amount asserted as due in the Collection Complaint.

38. Upon receipt of New Day's email and the Collection Complaint, Mr. Ray felt intense pressure to resolve the Collection Complaint because its existence interfered with his qualifying for the New Day loan.

39. Thereafter, in telephone and letter communication with AOLO and Ogle, Mr. Ray was asked to pay and felt coerced to pay large sums of money.

40. Shortly thereafter, because of the pending Collection Complaint, New Day denied Mr. Ray's application for a mortgage loan.

41. The denial of the loan application was caused by the filing of the Collection Complaint, thus causing pecuniary loss of the funds invested in obtaining the New Day loan.

42. When he learned that his loan was in danger of denial because of the Collection Complaint, Mr. Ray experienced anxiety, distress and personal injury, including spikes in blood pressure and sleepless nights worrying about the impact the Collection Complaint would have on his ability to obtain funds through the loan from New Day.

43. Mr. Ray also spent anxious hours on the telephone with county officials trying to obtain an understanding of the Collection Complaint and how that related to loan disqualification by New Day.

44. Mr. Ray was later forced to obtain a loan from a different company, incurring additional expenses. ("Substitute Loan")

45. The Substitute Loan contained less favorable terms and higher fees than would have been available with the New Day loan and in the absence of the pending lawsuit, thus causing additional pecuniary loss.

46. Defendants attached to the Collection Complaint a false "Affidavit of Claim."

47. The Affidavit of Claim is executed by Kaelyn Kowalik as "Account Administrator" for Cross River Bank.

48. Kaelyn Kowalik is not an Account Administrator for Cross River Bank.

49. Kaelyn Kowalik is not employed by Cross River Bank.

50. Kaelyn Kowalik is not authorized to execute the Affidavit of Claim on behalf of Cross River Bank.

51. Each statement in the foregoing three paragraphs, that Kaelyn Kowalik is an Account Administrator for Cross River Bank; that she is employed by Cross River Bank, and that she is authorized to execute the Affidavit of Claim on behalf of Cross River Bank is a false statement.

52. Each false statement of Kaelyn Kowalik was made under oath duly and legally administered by a person authorized by law to administer oaths and under circumstances indicating that Kaelyn Kowalik by her unequivocal and present act took upon herself the obligation of an oath.

53. Kaelyn Kowalik knew at the time she made each false statement that each false statement was, indeed, false

54. Defendants induced Kaelyn Kowalik to make the false statements as a condition of her employment and part of her employment duties with the knowledge and intent that each false statement made by Kaelyn Kowalik would be filed, and was made to be filed, in official proceedings in Ohio and were in fact filed in official proceedings in Ohio.

55. Defendants filed the Affidavit of Claim with knowledge of its falsity or in reckless disregard of the truth, knowing that Kaelyn Kowalik is not an Account Administrator for Cross River Bank, that Kaelyn Kowalik is not employed by Cross River Bank, and that Kaelyn Kowalik is not authorized to execute the Affidavit of Claim on behalf of Cross River Bank.

56. The false statements in the affidavit of Kaelyn Kowalik are material to the questions of standing and statement of the debt claimed to be due in an official proceeding in Ohio.

57. Defendants have filed similar false affidavits by Kaelyn Kowalik and other affiants in other official proceedings against Ohio consumers, in each and every case with knowledge of

the falsity of the affidavit or in reckless disregard of the truth of each affidavit, and with knowledge that the false statements were material statements.

58. In preparing and obtaining the sworn affidavit of Kaelyn Kowalik and other affiants in other official proceedings, Defendants acted with the purpose to corrupt the affiant and improperly influence the affiant with respect to the affiant's testimony in an official proceeding, offering for such influence a valuable benefit including but not limited to a paycheck or continued employment

59. Defendants falsely asserted in the Collection Complaint that the plaintiff had standing to file the lawsuit based on a valid assignment.

60. Defendants have made similar false assertions of standing, relying on similar knowingly false statements of material facts in affidavits, in collection complaints in official proceedings filed against other Ohio consumers in other Ohio official proceedings.

61. Defendants filed the Collection Complaint beyond the period of limitation provided under Ohio law for bank loans.

62. Defendants have filed collection complaints in official proceedings against other Ohio consumers beyond the period of limitation provided under Ohio law for bank loans.

63. Each Defendant and Kaelyn Kowalik are persons as that term is used in various criminal statutes, including, but not limited to O.R.C. 2921.11, 2921.13; 2921.02, 2905.12 and 2913.02 and 2923.31

64. Plaintiff Melvin Ray has legal freedom of choice to refrain from paying a claim to an entity which is not entitled to be paid on the claim.

65. Plaintiff Melvin Ray has legal freedom of choice to refrain from paying a claim where the claim is not enforceable for any reason, such as that the claim is asserted at a time after the statute of limitations has expired.

66. In filing its Complaint in an official proceeding in Ohio based on perjury, subornation of perjury, false statement, beyond the statute of limitations, and other conduct listed herein, Defendants were taking action to cause official action to be taken obtain a judgment and to collect on a debt from Mr. Ray in violation of the prohibition against coercion set forth in O.R.C. 2905.12/ Coercion.

67. Mr. Ray has suffered damages in the form of injury to person and property as a result of the foregoing actions.

68. Defendants as principal and/ or master knowingly authorized, participated in, and/or ratified the actions of Kaelyn Kowalik and similar affiants.

69. Defendants knowingly and intentionally exercised deception in an effort to obtain or exert control over the property of Plaintiff Melvin Ray by "utilizing the legal structure" in Ohio in violation of R.C 2913.02(A) and (B).

70. Debt collectors including attorneys engaged in debt collection may be liable as suppliers under the CSPA, *Taylor v. First Resolution Investment Corp.*, Ohio Attorney General's Public Inspection File (PIF) No. 3265.

71. Suppliers like Defendants may engage in deceptive and unconscionable consumer sales practices by filing debt collection lawsuits. *Celebrezze v. United Research, Inc.,* PIF 454.

## Class Allegations

72. Plaintiff incorporates by reference all allegations of this pleading as if fully rewritten herein.

73. Counts One through Five are brought on behalf of Mr. Ray and a class of Consumers, similarly situated to Plaintiff, who have been or may be subjected to one or more of Defendants' unlawful collection related practices.

74. The first class of Consumers consists of all persons against whom Defendants filed, or caused to be filed, a legal action in an Ohio court in the one year preceding the filing of this Complaint, and the Consumer was subjected to one or more of the actions described in Counts One.

75. The second class of Consumers consists of all persons against whom Defendants filed, or caused to be filed, a legal action in an Ohio court in the two years preceding the filing of this Complaint, and the Consumer was subjected to one or more of the actions described in Counts Two and Five.

76. The third class of Consumers consists of all persons against whom Defendants filed, or caused to be filed, a legal action in an Ohio court in the four years preceding the filing of this Complaint, and the Consumer was subjected to one or more of the actions described in Count Four.

77. The fourth class of Consumers consists of all persons against whom Defendants filed, or caused to be filed, a legal action in an Ohio court in the six years preceding the filing of this Complaint, and the Consumer was subjected to one or more of the actions described in Count Three.

78. The number of members in each of these classes is so numerous that joinder of all members is impracticable.

79. Certification of a class under Ohio Civil Rule 23 is appropriate in that the classes are so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims of the representative parties are typical of the claims of the class, and the representatives will fairly and adequately protect the interests of the classes.

80. There are questions of law and fact common to the class, including whether Defendants maintained practices, procedures or policies of filing false documents, filing time-barred cases, filing collection cases on behalf of persons who did not possess the right to do so, and whether these practices, procedures and policies violate consumer protection laws, or demonstrate intentional or negligent conduct.

81. These common questions of law or fact predominate over any questions affecting only individual members.

82. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

83. The claims and defenses of plaintiff are typical of the claims and defenses of the class members. All are based on the same legal and factual theories and predominant common questions.

84. Plaintiff will fairly and adequately protect the interest of the class. He has a substantial interest in the controversy and has retained experienced counsel. Neither plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this action.

85. Each class member's claim is relatively small; thus, it may be impracticable for class members to file individual actions. Also, because Defendants are well-capitalized entities and effective presentation of the causes of action asserted requires significant expense, the interest of members of the class in individually controlling the prosecution or defense of separate actions is minimal.

86. Defendants institute collection actions and often secure default judgments against individuals and consumers, thus Consumers are unaware of their rights. These facts were acknowledged by the Ohio Supreme Court in *Taylor v. First Resolution Invest. Corp.*, 148 Ohio St.3d 627, 2016-Ohio-3444, ¶5. A class action is therefore essential to prevent a failure of justice.

87. The evidence needed to adjudicate claims on a class-wide basis is readily available from Defendants' business records. Thus, the difficulties likely to be encountered in the management of this class action are much less than in the case of many types of actions routinely certified, such as class actions for securities fraud or toxic torts.

## Count One - FDCPA

88. Mr. Ray incorporates all allegations of this pleading as if fully rewritten herein.

89. Defendants are "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

90. Defendants violated the FDCPA through their consumer debt collection activities.

91. Defendants acted individually and as a joint venture for the commission of debt collection violations, which include, but are not limited to, the following:

92. Defendants violated 15 U.S.C. § 1692e and 1692f when they filed false affidavits in lawsuits against Mr. Ray and class members.

93. Defendants violated 15 U.S.C. § 1692e and 1692f when, in lawsuits against Mr. Ray and class members, they made false representations as to the competence of the plaintiff to sue.

94. Defendants violated 15 U.S.C. § 1692e and 1692f when they filed time-barred lawsuits against Mr. Ray and class members.

95. Defendants violated 15 U.S.C. § 1692e and § 1692f when they made false, misleading and/or unfounded representations as to assignment of ownership rights upon which the collection lawsuit was based.

96. Defendants violated 15 U.S.C. § 1692e and § 1692f when they made false, misleading and/or unfounded representations as to authority, capacity and employment relationships of entities executing documents that purported to assign rights upon which the collection lawsuit was based.

97. Defendants violated 15 U.S.C. § 1692e(8) by reporting or causing to report inaccurate credit information, as to the illegally filed lawsuits, which they knew or should have known was false.

98. Defendants violated 15 U.S.C. § 1692e, § 1692f and § 1692d, when they employed a pattern and practice of filing invalid lawsuits, with inadequate investigation of the debt before filing the lawsuit, with the use of false documents and false or misleading representations, with the improper motive of cheating unsuspecting or unsophisticated consumers.

99. Mr. Ray and the class suffered damages as a result of Defendants' violations.

100. As a result of the violations of the FDCPA, Defendants are liable to Mr. Ray and the class for declaratory judgment that Defendants' conduct violated the FDCPA, and actual damages, statutory damages, and costs and attorney's fees.

## Count Two - CSPA

101. Mr. Ray incorporates by reference all allegations of this pleading as if fully rewritten herein.

102. In an analogous circumstance, the Ohio Supreme Court has held that debt collectors such as the current Defendants are suppliers, and the attempt to collect debt from a consumer such as the plaintiff is a consumer transaction for the purposes of the CSPA. *See, Taylor v. First Resolution Invest. Corp.*, 2016-Ohio-3444, PIF 3265.

103. In attempting to collect a debt from plaintiff and other class members, through the actions described above, Defendants knowingly committed unfair, deceptive and/or unconscionable acts or practices.

104. Said acts and practices were committed by Defendants with a conscious disregard for the rights and safety of the consumer, and had a great probability of causing substantial harm.

105. As a direct and proximate result of such conduct, plaintiff and other class members have suffered monetary damage, great aggravation, humiliation, frustration, and inconvenience, and other damages to be proven at the trial of this case.

106. These acts of the Defendants, to violate the CSPA, have been determined by courts of this state to violate Ohio R.C. § 1345.02 or Ohio RC § 1345.03, and were committed by Defendants after such decisions were made available for public inspection under Ohio R.C. § 1345.05(A)(3). Court decisions available for review in the Ohio Attorney General's Public Inspection File (PIF) include, but are not limited to, the following: *Becker v. Montgomery, Lynch*, Case 1:02-cv-874 (U.S. Dist. Ct., N.D. Ohio, 2/3/2003), Ohio AG PIF 10002153, 4/30/2003; *Chesnut v. Progressive Cas. Ins.*, 2006-Ohio-2080, Ohio AG PIF# 10002473; *Delawder v. Platinum Financial Services Corp. et al.*, Case C-1-04-680 (U.S. Dist. Ct., S.D. Ohio, 3/10/2006), Ohio AG PIF 10002438, 3/11/2006; *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29 (1990), Ohio AG PIF 10001113, 10/19/1990; *Ford v. Brewer*, 86AP–626, 1986 WL 14259 (Ohio Ct.App. Dec. 9, 1986), Ohio AG PIF# 10000888; *Foster v. D.B.S. Collection Agency, et al.*, Case 2:01-cv-00514-ALM-TPK (U.S. Dist. Ct., S.D. Ohio, 12/5/2006), Ohio AG PIF 10002518, 12/12/2006; *Gatto v. Frank Nero Auto Lease, Inc.*, Ohio Ct. App., 8th District, Case 74894. Ohio AG PIF 10001812, 2/15/2000; *Hagy v. Demers & Adams, LLC*, US Dist. Ct., SDOH, Case 11-CV-530, Ohio AG PIF# 10003210; *Hartman v. Asset Acceptance Corp.*, Case 1:03-cv-113 (U.S. Dist. Ct., S.D. Ohio, 2/7/2006), Ohio AG PIF 10002329, 3/7/2005; *Kelly v Montgomery Lynch*, Case 1:07-CV-919 (U.S. Dist. Ct., N.D. Ohio, 4/15/2008), Ohio AG PIF 10002653, 4/22/2008; *Liggins v. May Company*, 53 Ohio Misc. 21(1977) Ohio AG PIF 10000310; *Motzer v. Ohio Attorney General* (Butler, 1994) 95 Ohio App.3d 183, Ohio AG

PIF#10001316; *State ex rel DeWine v. Royal Oak Financial Services, Inc.*, Lucas County Common Pleas Court Case CI-2012-5440, Ohio AG PIF# 10003097; *State ex rel DeWine v. Universal Debt and Payment Solutions, Inc.*, (Jan. 29, 2016), Case No. CV -15-845782, Cuyahoga County Common Pleas Court, Ohio AG PIF #3259; *State ex rel. Celebrezze v. Scandinavian Health Spa*, Summit County Court of Common Pleas, Case CV863-1158, Ohio AG PIF 10000744, 4/10/1986; *Taylor v. First Resolution Invest. Corp.*, 2016-Ohio-3444, Ohio AG PIF# 3265; *Walker v. Dominion Homes, Inc.*, 2005–Ohio-6055, Ohio AG PIF# 10002405; *D.A.N. Joint Venture III, L.P. v. Armstrong*, 2007-Ohio-898, Ohio AG PIF# 10003148; *Midland Funding LLC v. Brent*, Case 08-CV-1434 (U.S. Dist. Ct., N.D. Ohio 8/19/2009) Ohio AG PIF# 10002800; *State ex rel DeWine v. Rotech Holdings Ltd*, Ohio AG PIF# 3269, 8/1/2016; *Bennett v. Tri-State Collection Service*, Ohio AG PIF# 10000437, 11/5/1979; *Centran Bank of Akron v. Hamilton*, Ohio AG PIF# 10000931, 4/29/1989.

## Count Three – Commission of Criminal Acts

107. Mr. Ray incorporates by reference all allegations of this pleading as if fully rewritten herein.

108. Defendants violated Ohio and Federal criminal statutes, as well as the common law, in committing acts of perjury, subornation of perjury, corruption of a witness, theft, falsification, tampering with evidence, extortion, intimidation, receiving stolen property, engaging in a pattern of corrupt activity, mail fraud and wire fraud when they employed a pattern and practice of filing invalid, unjustified lawsuits, with inadequate investigation of the debt before filing the lawsuit, with the use of false documents and false or misleading representation, with the improper motive of cheating unsuspecting or unsophisticated consumers.

109. The pattern of pressuring payments through false statements, initiating invalid lawsuits, and using official proceedings to enforce judgments obtains through invalid lawsuits based on false statements, is a pattern of corrupt activity involving multiple acts in violation of multiple criminal statutes

110. The corrupt activity described herein involves multiple incidents of corrupt activity that are related to the affairs of the same debt-collection enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.

111. Repeated such incidents have occurred over the last six years prior to the date of the incidents related to Mr. Ray, and continuing to this day.

112. The pattern of corrupt activity between and among AOLO, Ogle and other individuals and entities, such as but not limited to, affiants from other entities, constitutes acts through a group of persons associated together for the common purpose of engaging in a course of conduct as an association-in-fact enterprise.

113. Each Defendant is employed by or associated with an enterprise and through that enterprise conducts or participates in the affairs of the enterprise through a pattern of corrupt activity.

114. Each Defendant, through a pattern of corrupt activity and in association with the enterprise, has acquired and maintained an interest in and control of an enterprise.

115. Each defendant knowingly has received proceeds derived from a pattern of corrupt activity and has invested those proceeds into the operation of the enterprise and, on information and belief, to acquire control of or interest in real property.

116. Each Defendant, through receipts of funds through coerced settlements, or official proceedings, knowingly has received stolen property.

117. Mr. Ray has been injured in person and property, including personal injury and pecuniary loss, by the criminal acts of Defendants and is entitled to compensatory damages for such injury, as well as costs and attorney fees, treble damages, and punitive damages.

118. Defendants through their criminal acts of deception in official proceedings, as set forth in this Complaint, have attempted to obtain or obtained payments and collection through consent decrees, default judgments and judgments with the purpose to knowingly deprive the true owners of their property or services without their consent or through deception.

119. The criminal acts complained of are taken with a purpose to coerce Mr. Ray, and others similarly situated, into taking action to pay a debt not owed, or not owed to the entity named in the collection complaint, or not enforceable through legal action, by threatening or causing official actions such as judgments, judgment liens, bank attachments, and wage garnishments.

120. Defendants conduct such criminal acts with the purpose to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of corrupt activity.

121. Defendants' conduct is done with the purpose to coerce Mr. Ray and other class members to take action, such as to offer and/or pay money to settle such claim, where Mr. Ray and others have or had the legal freedom of choice to pay and this constitutes the crime of coercion.

122. Defendants' conduct is done with the purpose to threaten or cause official action to be taken with respect to those claims, such as judgments and execution thereon, where Mr. Ray and others have or had the legal freedom of choice to pay and this constitutes the crime of coercion.

123. Defendants, with the purpose to corrupt or improperly influence with promises of valuable things not limited to compensation, paychecks, or continued employment, caused Kaelyn Kowalik and other affiants to make false sworn statements for use in official proceedings, and thereby corrupted witnesses.

124. Defendants' knowing false statements of right to collect on a purported claim of indebtedness against Mr. Ray, made in an official proceeding to mislead a Judge in his or her official function, with the purpose to deprive Mr. Ray and other class members of property without their consent by deceptions is the crime of falsification.

125. The affidavit of Kaelyn Kowalik was made by a person before a notary authorized to administer oaths and made knowingly false statements under oath of material facts in violation of the prohibition against perjury.

126. Defendants induced or procured the perjured testimony of Kaelyn Kowalik and other affiants in violation of the prohibition against subornation of perjury.

127. Defendants conspired with Kaelyn Kowalik and others in the commission of the crimes described above and engaged in a pattern of corrupt activity.

128. In engaging in settlement discussions with Mr. Ray to coerce payment of the claim based on threat of or misrepresentation regarding liability on the Collection Complaint, Defendants conducted or attempted to conduct a transaction with the purpose to promote, manage, establish, carry on, or facilitate the promotion, management, establishment or carrying on of corrupt activity.

129. Defendants, with the purpose to obtain a valuable benefit in the form of payment of money through settlement, bank attachment, or wage garnishment, exposed and threatened to expose Mr. Ray to debt collection activity which activity damaged his personal business and impaired his ability to obtain credit.

130. The actions of Defendants demonstrate malice and or aggravated or egregious fraud including but not limited to fraud upon the court.

131. Defendant AOLO as principal or master knowingly authorized, participated in, or ratified the acts of their agent, employee or servant in perjury and falsification.

132. As a result of Defendants acts of malice and fraud, and as a result of Defendants' knowing authorization of, participation in and ratification of the acts of their agent, employee or servant in perjury and falsification, Mr. Ray is entitled to punitive damages under the statutes and common law of Ohio.

## Count Four - Fraud

133. Mr. Ray incorporates by reference all allegations of this pleading as if fully rewritten herein.

134. Defendants committed fraud on Ohio courts and on Ohio consumers, including Mr. Ray, by intentionally or with reckless disregard for the truth:

    a. Filing false affidavits.
    b. Misrepresenting or concealing the identity of the real party in interest in collection lawsuits filed in Ohio courts.
    c. Misrepresenting the chain of title of the debt claimed in collection lawsuits filed in Ohio, in complaints and supporting documents filed in Ohio courts.
    d. Misrepresenting the status of the creditor of the debt alleged in the lawsuits.
    e. Misrepresenting the authority, capacity and employment relationships of entities named in documents filed in collection lawsuits.

135. Such false representations were made to courts, Mr. Ray and the class.

136. Such false representations were made in pleadings and other documents filed in Ohio courts, including the collection action filed against Mr. Ray.

137. The dates, times and place of each such false representation are documented in the court cases filed by the Defendants, including this case filed against Mr. Ray.

138. Defendants knew of the falsity of these representations or acted in reckless disregard of the truth in making the false representations.

139. Defendants made such false representations with the purpose and intention to mislead the courts and to create the false impression that they had met requirements of court rules, thereby depriving the litigation of its legitimacy.

140. Defendants also made such false representations with the purpose and intention to mislead Mr. Ray and the class.

141. Mr. Ray, the class and the courts were justified in relying upon such representations and did so rely through action or inaction upon receipt of the misrepresentations. Actions include engaging legal counsel and other litigation related activities.

142. Mr. Ray and the class suffered damages, through loss of resources, as a proximate result of such reliance.

## Count Five – Negligence

143. Mr. Ray incorporates by reference all allegations of this pleading as if fully rewritten herein.

144. Defendants negligently failed to ensure that the documents filed in collection lawsuits, against the Plaintiff and the class, were signed by authorized persons. As a result, plaintiff and the class have suffered damages.

145. Defendants negligently failed to ensure that collection lawsuits, against the Plaintiff and the class, were filed within the period of limitations allowed by Ohio law. As a result, plaintiff and the class have suffered damages.

146. Defendants negligently failed to ensure that collection lawsuits, against the Plaintiff and the class, were filed in the name of persons competent to do so under Ohio law. As a result, plaintiff and the class have suffered damages.

147. Defendants negligently failed to ensure that personal and private information of the Mr. Ray and other class members was not obtained or disseminated without legal authority. As a result, plaintiff and the class have suffered damages.

148. AOLO negligently failed to supervise Ogle and other employees in the filing of collection lawsuits under the circumstances described above. As a result, plaintiff and the class have suffered damages.

## Damages

149. Plaintiff and the class suffered damages as a result of Defendants' violations.

150. As described above, Mr. Ray has expended money and time in connection with and in response to the Collection Case.

151. Mr. Ray suffered pecuniary loss in the denial of the mortgage loan from New Day for which he had expended in excess of $500.00 to qualify for the loan

152. Mr. Ray also suffered personal injury in the form of a spike in blood pressure and ill health resulting therefrom as a result of the filing of the lawsuit and its interference with his ability to qualify for the New Day Loan.

153. Mr. Ray suffered additional pecuniary loss in the higher costs and less favorable terms incurred with the Substitute Loan after the denial of the loan from New Day.

154. Mr. Ray and each member of the class described above have been or may be injured by Defendants' unlawful acts and practices, in one or more of the following ways:

   a. Monetary, emotional distress, aggravation, embarrassment, shame, humiliation, injury to reputation or credit injuries.
   b. Expenditure of money, time or effort in resisting Defendants' illegal actions, including payment of attorney fees.
   c. Creation of an unlawful and fictitious indebtedness, for which the consumer is ostensibly liable.
   d. Payment of the charges which are unreasonable, unnecessary or a penalty.

WHEREFORE, Mr. Ray respectfully requests that judgment be entered against Defendants for the following:

   a. Certify a class and appoint Mr. Ray as class representative and the undersigned counsel as class counsel.
   b. Award statutory, punitive, and compensatory and, treble damages. To comply with Civil Rule 8(A), Plaintiff states that relief sought in the Complaint, including class relief, may exceed $25,000.00.
   c. Provide injunctive relief to the class restraining Defendants from filing collection cases with false documents, filing time-barred cases, filing cases on behalf of persons incompetent to do so, or attempting to collect debt from the persons subjected to such unlawful conduct.
   d. Order Defendants to establish procedures which will prevent attempts or actions to collect debt through conduct, as alleged in this case.
   e. Order Defendants to operate according to procedures which will prevent attempts or actions to collect debt through conduct, as alleged in this case.
   f. Award attorney's fees, costs, and expenses.
   g. Award any other relief to which Mr. Ray and the class may be entitled to in law or equity.
   h. Make declaratory judgments and order such other and further relief as may be just and proper.

Respectfully submitted with a demand for a jury trial on all issues.

/s/ Susan M. Gray
Susan M. Gray (#0062356)
Ohio Savings Bank Building
22255 Center Ridge Rd. Suite 106
Rocky River, OH 44116
(440) 331-3949
(440) 331-8160 fax
smgray@smgraylaw.com

/s/Anand N. Misra
Anand N. Misra (#0067594)
The Misra Law Firm, LLC
3659 Green Road, Suite 100
Beachwood, Ohio 44122
(216) 752-3330
misraan@misralaw.com

Attorneys for Plaintiff

Exhibit 1

Consisting of Collection Complaint with Exhibits A-E

*UHG 1 LLC v Melvin Ray,* CV 21-948648



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

### Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**June 11, 2021 13:43**

By: BREE W. OGLE 0098580

Confirmation Nbr. 2275361

UHG I LLC, ASSIGNEE OF MARLETTE SERVICING
LLC

      vs.

MELVIN RAY

CV 21 948648

**Judge:**  JOSEPH D. RUSSO

Pages Filed:  20

Exhibit 1 p. 1

IN THE COMMON PLEAS COURT OF CUYAHOGA COUNTY, OHIO

UHG I LLC, ASSIGNEE OF MARLETTE SERVICING LLC,
AS SERVICER OF CROSS RIVER BANK

c/o ATKINS & OGLE LAW OFFICES, LC
P.O. BOX 300
BUFFALO, WV 25033

CASE NO. _____

JUDGE _____

        Plaintiff,

vs.

COMPLAINT
($30,198.93)

MELVIN RAY
1360 CLEVELAND HEIGHTS BLVD.
CLEVELAND HEIGHTS, OH 44121-1662

        Defendant.

## COMPLAINT

COMES NOW the Plaintiff, UHG I LLC, assignee of Marlette Servicing LLC, as servicer of Cross River Bank, by counsel, Bree W. Ogle, and for its complaint against the Defendant states the following:

1.     Upon information and belief, Defendant, Melvin Ray (hereinafter referred to as the "Defendant"), is an individual who resided and/or maintains an address and/or domicile sufficient to allow the Court to maintain jurisdiction and venue of this matter.

2.     Defendant was issued a loan on 07/28/2015.

3.     Defendant has failed to pay back said loan, and Plaintiff is owed the sum of $30,198.93, on a past due account.

4.     The last payment in the amount of $835.92 was made on 12/31/2016.

5.     Plaintiff, or its agents, has made demand on Defendant, but Defendant has failed to liquidate the balance due and owing.

6.     Plaintiff is requesting judgment against the defendant, Melvin Ray, in the amount of $30,198.93.

Exhibit 1 p. 2

7.    In support of Plaintiff's claim, attached to this Complaint are an Affidavit of Claim and Certification of Amount Due as Exhibit "A"; a copy of the Loan Agreement as Exhibit "B"; and a Transaction History, which verifies the amount due, is attached hereto as Exhibit "C".

8.    Plaintiff has also attached a Bill of Sale with attachment as Exhibit "D"; and a Status Report of the Department of Defense Manpower Data Center as Exhibit "E", pursuant to the Servicemembers Civil Relief Act.

Wherefore, Plaintiff demands judgment against Defendant for the sum of $30,198.93, plus post-judgment interest at the statutory rate per annum from date of judgment, and costs expended herein.

Bree W. Ogle (Ohio Bar #98580)
Counsel for Plaintiff
ATKINS & OGLE LAW OFFICES, LC
P. O. Box 300
Buffalo, WV 25033
(304) 937-4919

Exhibit 1 p. 3

*"A"*  105176

# AFFIDAVIT OF CLAIM
## AND CERTIFICATION OF AMOUNT DUE

**CURRENT ACCOUNT HOLDER:** UHG I
**ORIGINAL ACCOUNT NUMBER:** XXXX0458
**ORIGINAL CREDITOR:** Cross River Bank

STATE OF _____ NY _____
COUNTY OF _____ Erie _____, TO-WIT:

Personally appeared before me, the undersigned, being duly sworn and deposes as follows:

1. That Affiant is at least eighteen (18) years of age, competent to testify and has personal knowledge of the facts set forth herein;

2. That Affiant is authorized to make oath on behalf of plaintiff;

3. That one of the Affiant's responsibilities is to serve as keeper of the books and records of plaintiff which are kept in the ordinary course of business, with the entries in them having been made at or near the time of the occurrence;

4. That Affiant has reviewed the books and records of plaintiff, with respect to the indebtedness of **Melvin Ray**, Debtor(s), which reflect that as of 09/30/2017, there was an amount justly due on account number **0458** of **$30198.93;**

5. Debtor is responsible for payment of attorney fees and collection costs pursuant to the account terms and conditions and/or where authorized by law.

## FURTHER AFFIANT SAYETH NOT:

4/20/21
Date

**Cross River Bank**

By: _____
Name: Kaelyn Kowalik
Title: Account Administrator

Notary Signature _____
Subscribed and acknowledged to me on _____
My Commission expires _____ 10/10/21 _____.

Acct No.: XXXX0458
UHG No.: 66P000027680
Firm: 105176.001

CHRISTINA MARIE SALOIS
Notary Public - State of New York
No. 01SA6365479
Qualified in Erie County
My Commission Expires 10/10/2021

Exhibit 1 p. 4



# LOAN AGREEMENT 07/2016

Melvin Ray

1360 CLEVELAND HEIGHTS BLVD

CLEVELAND HTS, OH 44121

81bc211a-6058-43f8-9f73-a4e001802e6a

**Cross River Bank**

Best Egg Loan Agreement and Promissory Note

The terms and conditions of this Loan Agreement and Promissory Note (this "Agreement") are a binding contract between Cross River Bank ("we," "us," or "our") and the borrower ("you" and "your"), whose name and address are: listed above. The terms of this Agreement affect your rights and you should read them carefully and print a copy for your records. Your agreement to these terms means you agree to borrow and repay the money if your loan is approved under the terms of this Agreement, and agree to have any dispute with us resolved by binding arbitration.

**1. Loan Terms.**

a. The principal Amount of Your Loan is: $30,000.00

b. The Origination Fee is: $1,497.00

c. The Amount Given to You Directly is: $28,503.00

d. The Annual Loan Interest Rate is: 22.43%

e. Your Payment Schedule is: 59 consecutive monthly payments of $835.92 and one final payment of the unpaid principal balance, all unpaid interest, and all unpaid fees and charges. The first payment will be one calendar month after the loan is funded. See paragraph 7. Payments, below, for more details.

f. Your loan is unsecured.

**2. Credit Reports.** You hereby authorize us (and our service providers) to obtain consumer reports (also called credit reports) and related information about you from one or more consumer reporting agencies. We may also obtain additional consumer reports at any time in connection with the origination, servicing, administration, collection, or enforcement of the loan.

**3. Verification of Information.** We may verify any information you submit by requiring you to produce appropriate documentation or other proof, and also reserve the right to conduct such verification through any third parties. You hereby authorize us to request and obtain data from any third parties to verify any information you provide to us in connection with your application.

Exhibit 1 p. 5



Verification of information may cause a delay in the disbursement of loan proceeds. We may terminate consideration of your application at any time in our sole discretion.

**4. Loan Funding and Closing.**

- Funding. You authorize us to disburse the loan proceeds by Automated Clearing House ("ACH") transfer to your designated account or on your behalf to your selected designee.
- Closing. BY ELECTRONICALLY SIGNING OR AGREEING TO THIS AGREEMENT IN ANOTHER WAY, YOU ARE COMMITTING TO OBTAIN A LOAN FROM US IN THE AMOUNT AND ON THE TERMS SET FORTH IN THIS AGREEMENT. YOU HAVE NO RIGHT TO RESCIND THE LOAN ONCE MADE BUT YOU MAY PREPAY THE LOAN AT ANY TIME WITHOUT PENALTY. WE HAVE NOT AGREED TO MAKE A LOAN TO YOU UNLESS AND UNTIL WE INFORM YOU THAT WE HAVE APPROVED YOUR LOAN APPLICATION.
- Closing by Telephone: IF YOU AGREE TO THE TERMS OF THE LOAN BY TELEPHONE, WE WILL DISBURSE THE LOAN PROCEEDS TO YOU. WE WILL SEND YOU A FINAL TRUTH IN LENDING DISCLOSURE STATEMENT THAT WILL CONFIRM THESE TERMS.

**5. Promise to Pay.** You promise to pay to us the Amount of Your Loan set forth in paragraph 1. Loan Terms, above, together with interest and fees as provided in this Agreement.

**6. Interest.** You agree to pay interest on the unpaid principal balance of the Amount of Your Loan from the date the loan proceeds are disbursed until the loan is paid in full, at the fixed Annual Loan Interest Rate set forth in paragraph 1. Loan Terms, above. Interest is calculated on a daily basis, on the unpaid principal balance, at the interest rate, and for the number of days that balance was unpaid. This is a simple interest obligation, and interest is not charged on unpaid interest, except interest is charged on the unpaid origination fee. The Total of Payments and amount of the Finance Charge set forth in the Truth in Lending Disclosure Statement assume that each payment is made on its due date. Late payments will result in more interest; early payments will result in less interest.

**7. Payments.** You agree to make monthly payments of principal and interest, in the amounts and on the dates set forth in the payment schedule in paragraph 1. Loan Terms, above. Your payment date is the same date each month, except that if your payment date is on the 29th, 30th, or 31st of a month, then your payment date will be the last day of any month that does not have a 29th, 30th, or 31st day (as applicable). The last payment may be a different amount because of rounding and because of when you made your prior payments and whether you paid them in full.

**8. Making Your Loan Payments.** If you authorize us and our successors and assigns (and any of our successors' and assignees' affiliates, agents or service providers), we will debit your designated account by ACH transfer for the amount of the payment due on its due date. You may elect to make payments by check, by contacting our customer service department at 1-844-825-2808. If you elect to make payments by check, you must send the checks either (i) by regular mail to Systems and Services Technologies Inc., P.O. Box 5493, Carol Stream, IL 60197-5493, or (ii) by overnight mail or UPS delivery to Systems and Services Technologies Inc., Attn. Lockbox Operations, Box 5493, 2400 Ogden Ave, Ste. 120, Lisle, IL 60532. If you do not elect to make payments by check, you authorize

Exhibit 1 p. 6

"*B*"

us and our successors and assigns (and any of our successors' and assignees' affiliates, agents or service providers) to debit your designated account by ACH transfer for the amount of each remaining payment due on its due date, however, if your payment due date occurs on a non-business day, your account will be debited the next business day. You will maintain sufficient funds in your designated account to make these payments. This authorization does not affect your obligation to pay when due all amounts payable on your loan, whether or not there are sufficient funds in your accounts. The foregoing authorization is in addition to, and not in limitation of, any rights of setoff we may have. With regard to payments made by automatic withdrawal, you have the right to stop payment of automatic withdrawals or revoke your prior authorization for automatic withdrawals by notifying us or your financial institution at least three (3) banking days before the scheduled date of transfer. You must notify us of the exercise of your right to stop a payment or revoke your authorization for automatic withdrawals at least three (3) banking days before the scheduled date of transfer. You have the right to have any unauthorized debit credited to your bank account in accordance with the applicable provisions of the Electronic Funds Transfer Act as implemented by Federal Reserve System Regulation E. If you stop the automatic withdrawals, you are still obligated to make each payment that is due. You will receive a monthly statement advising of your payment amount. You may contact us for instructions on how to make payments by other payments options.

**9. Prepayments and Partial Payments.** You may make any payment early, in whole or in part, without penalty or premium at any time. Any partial prepayment is to be applied against the principal amount outstanding and does not postpone the due date of any subsequent monthly installments, unless we otherwise agree in writing. If you prepay the principal amount in part, you agree to continue to make regularly scheduled payments until all amounts due under this Agreement are paid. We may accept late payments or partial payments, even though marked "paid in full" or with similar language, without losing any rights under this Agreement. We will use any payment we receive to pay any payment then due, in whole or in part; if no payment is then due, we will use any payment of the regularly scheduled payment amount to pay the next scheduled payment. If the next scheduled payment has been paid, or if the payment is in another amount, we will treat the payment as a partial prepayment, unless you and we agree otherwise.

**10. Application of Payments.** All regularly scheduled payments are to be applied first to the payment of returned check or ACH fees, then to accrued interest, then to outstanding principal, then to collection and other permitted expenses, and then to late fees; provided, however, that after an Event of Default (as defined below), payments will be applied to your obligations as we determine in our sole discretion.

**11. Other Borrower Obligations.** You agree that you (A) are a US citizen or permanent resident and (B) did not and will not, in connection with your loan application: (i) make any false, misleading or deceptive statements or omissions of fact in your application; (ii) misrepresent your identity, or describe, present or portray yourself as a person other than yourself; (iii) use any of the loan proceeds to fund any post-secondary educational expenses, including, but not limited to, tuition, fees, books, supplies, miscellaneous expenses, or room and board. You acknowledge and agree that we may rely without independent verification on the accuracy, authenticity, and completeness of

Exhibit 1 p. 7



all information you provide to us. You certify that the proceeds of the loan will not be used for the purpose of purchasing or carrying any securities or to fund any illegal activity.

**12. Fees.**

- Origination Fee. If applicable, you agree to pay a non-refundable Origination Fee to us, as set forth in paragraph 1. Loan Terms, above. This fee will be deducted from your loan proceeds, so the Amount Given to You Directly or on your behalf will be less than the full principal Amount of Your Loan. You acknowledge that the Origination Fee will be considered part of the principal on your loan and is subject to the accrual of interest.
- Returned Check or ACH Fee. You agree to pay a fee of $15, if ACH transfers or checks are returned or fall due to insufficient funds in your account or for any other reason. Each attempt to collect a payment is considered a separate transaction, so an unsuccessful payment fee will be assessed for each failed attempt. The bank that holds your designated account may assess its own fee in addition to the fee we assess.
- Late Fee. If your payment is not received by us within three days of the due date, we may charge a late fee in the amount of $15. We will charge only one late fee on each late payment. These fees may be collected using ACH transfers initiated by us from your designated account. Any such late fee assessed is immediately due and payable. Any payment received after 6:00 P.M., Eastern Time, on a banking day is deemed received on the next succeeding banking day.
- Extension Fees. You agree to pay a fee of $25 or such other amount as provided by law for the processing of your request for an extension of this Agreement.

**13. Default.** You will be deemed in default on your loan (each, an "Event of Default") if you: (1) fail to pay timely any amount due on your loan; (2) file or have instituted against you any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) die; (4) commit fraud or make any material misrepresentation in this Agreement, or any other documents, applications or related materials delivered to us in connection with your loan; or (5) fail to abide by the terms of this Agreement. Upon the occurrence of an Event of Default, and after any notice and opportunity to cure the default, if such notice and right to cure is required by applicable law, we may exercise all remedies available to us under applicable law and this Agreement, including without limitation, demand that you immediately pay all amounts owed on your loan.

**14. Collection & Reporting of Delinquent Loans.** You agree to pay all costs of collecting any delinquent payments, as permitted by applicable law, including, if we file suit in court, reasonable attorneys' fees for an attorney who is not our salaried employee. We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**15. Communications Consent:** You agree that we and any of our affiliates, agents, service providers or assignees (and any of our assignee's affiliates, agents or service providers) may call you, leave you a voice prerecorded, or artificial voice message, or send you a text, e-mail, or other electronic message for any purpose related to the servicing and collection of your loan, for surveys

Exhibit 1 p. 8



or research or for any other informational purpose related to your loan (each a "Communication"). You agree that we and any of our affiliates, agents, service providers or assignees (and any of our assignee's affiliates, agents or service providers) may call or text you at any telephone number associated with your loan, including cellular telephone numbers, and may send an e-mail to any email address associated with your loan. You also agree that we and any of our affiliates, agents, service providers or assignees (and any of our assignee's affiliates, agents or service providers) may include your personal information in a Communication and may conduct a Communication using an automatic telephone dialing system. We will not charge you for a Communication, but your data service provider may. In addition, you understand and agree that we and any of our affiliates, agents, service providers or assignees (and any of our assignee's affiliates, agents or service providers) may always communicate with you in any manner permissible by law that does not require your prior consent.

**16. Assignment of Your Loan.** You agree that we may, without further prior notice to or consent from you, assign any or all of our right, title and interest in this Agreement and your loan, including record of this loan, the debt incurred, any transfer of the obligation and your promise to repay, to anyone. Marlette Funding, LLC or its agents or designees, acting solely for this purpose as your agent, shall maintain at one of its offices in Wilmington, Delaware a copy of each assignment delivered to it and a register for the recordation of the name and address of the holder of your loan (including any assignee, if any, who becomes the holder of your loan pursuant to an assignment), and principal amounts (and stated interest) of your loan or loans owing to, such holder pursuant to the terms hereof from time to time (the "Register"). The entries in the Register shall be conclusive absent manifest error, and you, Cross River Bank or its agents or designees, and the holder of your loan (including any assignee, if any, who becomes the holder of your loan pursuant to an assignment) shall treat the person whose name is recorded in the Register pursuant to the terms hereof as a holder of your loan hereunder for all purposes of this Agreement. Recordation in the Register is the sole means of assignment or transfer of the holder's (or its assignee's) interest in your loan. The Register shall be available for inspection by you and any holder (including assignees), at any reasonable time and from time to time upon

**17. Entire Agreement.** This Agreement represents the entire agreement between you and us regarding the subject matter hereof and supersedes all prior or contemporaneous communications, promises and proposals, whether oral, written or electronic, between us with respect to your application and loan.

**18. Electronic Transactions.** THIS AGREEMENT IS FULLY SUBJECT TO YOUR CONSENT TO ELECTRONIC TRANSACTIONS AND DISCLOSURES, WHICH YOU AGREED TO AT THE TIME OF YOUR APPLICATION. YOU EXPRESSLY AGREE THAT THIS AGREEMENT IS A "TRANSFERABLE RECORD" FOR ALL PURPOSES UNDER THE ELECTRONIC SIGNATURES IN GLOBAL AND NATIONAL COMMERCE ACT AND THE UNIFORM ELECTRONIC TRANSACTIONS ACT.

**19. Notices.** All notices and other communications to you hereunder may be given by email to your email address on file with us or by regular mail to your address on file with us, and shall be deemed to have been duly given and effective upon transmission. You acknowledge that you have sole

Exhibit 1 p. 9

·B··

access to the email account on file with and that communications from us may contain sensitive, confidential, and collections-related communications. If your email address changes, you must notify us of the change. You also agree to update your residence address and telephone number if they change.

**20. NO WARRANTIES.** EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, WE MAKE NO REPRESENTATIONS OR WARRANTIES TO YOU, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

**21. LIMITATION ON LIABILITY.** IN NO EVENT SHALL WE BE LIABLE TO YOU FOR ANY LOST PROFITS OR SPECIAL, EXEMPLARY, CONSEQUENTIAL OR PUNITIVE DAMAGES, EVEN IF INFORMED OF THE POSSIBILITY OF SUCH DAMAGES. FURTHERMORE, WE MAKE NO REPRESENTATION OR WARRANTY TO YOU REGARDING THE EFFECT THAT THE AGREEMENT MAY HAVE UPON YOUR FOREIGN, FEDERAL, STATE OR LOCAL TAX LIABILITY.

**22. Waiver of Demand.** You hereby waive demand, notice of non-payment, protest, and all other notices or demands whatsoever.

**23. Amendments.** Any changes to this Agreement must be in writing signed by you and us.

**24. Miscellaneous.** The parties acknowledge that there are no third party beneficiaries to this Agreement. You may not assign, transfer, sublicense or otherwise delegate your rights or obligations under this Agreement to another person without our prior written consent. Any such assignment, transfer, sublicense or delegation in violation of this paragraph 24 shall be null and void. We are located in the state of New Jersey and this Agreement will be entered into in the state of New Jersey. The provisions of this Agreement will be governed by federal laws and, to the extent that state law applies, the laws of the state of New Jersey, without regard to any principle of conflicts of laws that would require or permit the application of the laws of any other jurisdiction. Any waiver of a breach of any provision of this Agreement will not be a waiver of any other subsequent breach. Failure or delay by either party to enforce any term or condition of this Agreement will not constitute a waiver of such term or condition. If at any time after the date of this Agreement, any of the provisions of this Agreement shall be held by any court of competent jurisdiction to be illegal, void or unenforceable, such provision shall be of no force and effect, but the illegality and unenforceability of such provision shall have no effect upon and shall not impair the enforceability of any other provisions of this Agreement. The headings in this Agreement are for reference purposes only and shall not affect the interpretation of this Agreement in any way.

## 25. Arbitration.

a. Either party to this Agreement, or any subsequent assignee of this Agreement, may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this paragraph 25 (the "Arbitration Provision"), unless you opt out as provided in paragraph 25(b) below. As used in this Arbitration Provision, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and us and/or any assignee (or persons claiming through or connected with us and/or any assignee), on the other hand, relating to or arising out of this

Exhibit 1 p. 10



Agreement and/or the activities or relationships that involve, lead to, or result from this Agreement, including (except to the extent provided otherwise in the last sentence of paragraph 25(f) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement. Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise. The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.

b. You may opt out of this Arbitration Provision for all purposes by sending an arbitration opt out notice to P.O. Box 3999 St. Joseph, MO 64503-0999, which is received at the specified address within 30 days of the date of your electronic acceptance of the terms of this Agreement. The opt out notice must clearly state that you are rejecting arbitration; identify the Agreement to which it applies by date; provide your name, address, and social security number; and be signed by you. You may send the opt out notice in any manner you see fit as long as it is received at the specified address within the specified time. No other methods can be used to opt out of this Arbitration Provision. If the opt out notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the opt out notice on your behalf.

c. The party initiating arbitration shall do so with the American Arbitration Association (the "AAA") or JAMS. The arbitration shall be conducted according to, and the location of the arbitration shall be determined in accordance with, the rules and policies of the administrator selected, except to the extent the rules conflict with this Arbitration Provision or any countervailing law. In the case of a conflict between the rules and policies of the administrator and this Arbitration Provision, this Arbitration Provision shall control, subject to countervailing law, unless all parties to the arbitration consent to have the rules and policies of the administrator apply.

d. If we (or any assignee) elect arbitration, we (or the assignee, as the case may be) shall pay all the administrator's filing costs and administrative fees (other than hearing fees). If you elect arbitration, filing costs and administrative fees (other than hearing fees) shall be paid in accordance with the rules of the administrator selected, or in accordance with countervailing law if contrary to the administrator's rules. We (or the assignee, as the case may be) shall pay the administrator's hearing fees for one full day of arbitration hearings. Fees for hearings that exceed one day will be paid by the party requesting the hearing, unless the administrator's rules or applicable law require otherwise, or you request that we (or the assignee) pay them and we agree (or the assignee agrees) to do so. Each party shall bear the expense of its own attorneys' fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary herein.

e. Within 30 days of a final award by the arbitrator, any party may appeal the award for reconsideration by a three-arbitrator panel selected according to the rules of the arbitrator administrator. In the event of such an appeal, any opposing party may cross-appeal within 30 days after notice of the appeal. The panel will reconsider de novo all aspects of the initial award that are appealed. Costs and conduct of any appeal shall be governed by this Arbitration Provision and the administrator's rules, in the same way as the initial arbitration proceeding. Any award by the



individual arbitrator that is not subject to appeal, and any panel award on appeal, shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered as a judgment in any court of competent jurisdiction.

f. We agree not to invoke our right to arbitrate an individual Claim you may bring in Small Claims Court or an equivalent court, if any, so long as the Claim is pending only in that court. NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS (INCLUDING AS PRIVATE ATTORNEY GENERAL ON BEHALF OF OTHERS), EVEN IF THE CLAIM OR CLAIMS THAT ARE THE SUBJECT OF THE ARBITRATION HAD PREVIOUSLY BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN A COURT AS CLASS REPRESENTATIVE, OR COLLECTIVE ACTIONS IN A COURT. Unless consented to in writing by all parties to the arbitration, no party to the arbitration may join, consolidate, or otherwise bring claims for or on behalf of two or more individuals or unrelated corporate entities in the same arbitration unless those persons are parties to a single transaction. Unless consented to in writing by all parties to the arbitration, an award in arbitration shall determine the rights and obligations of the named parties only, and only with respect to the claims in arbitration, and shall not (a) determine the rights, obligations, or interests of anyone other than a named party, or resolve any Claim of anyone other than a named party; nor (b) make an award for the benefit of, or against, anyone other than a named party. No administrator or arbitrator shall have the power or authority to waive, modify, or fail to enforce this paragraph 25(f), and any attempt to do so, whether by rule, policy, arbitration decision or otherwise, shall be invalid and unenforceable. Any challenge to the validity of this paragraph 25(f) shall be determined exclusively by a court and not by the administrator or any arbitrator.

g. This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the FAA. The arbitrator will apply substantive law consistent with the FAA and applicable statutes of limitations. The arbitrator may award damages or other types of relief permitted by applicable substantive law, subject to the limitations set forth in this Arbitration Provision. The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court. The arbitrator shall take steps to reasonably protect confidential information.

h. This Arbitration Provision shall survive (i) suspension, termination, revocation, closure, or amendments to this Agreement and the relationship of the parties and/or assignees; (ii) the bankruptcy or insolvency of any party or other person; and (iii) any transfer of any loan or this Agreement to any other person or entity. If any portion of this Arbitration Provision other than paragraph 25(f) is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. If an arbitration is brought on a class, representative, or collective basis, and the limitations on such proceedings in paragraph 25(f) are finally adjudicated pursuant to the last sentence of paragraph 25(f) to be unenforceable, then no arbitration shall be had. In no event shall any invalidation be deemed to authorize an arbitrator to determine Claims or make awards beyond those authorized in this Arbitration Provision. THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF ANY PARTY ELECTS ARBITRATION PURSUANT TO THIS ARBITRATION PROVISION. THE PARTIES

Exhibit 1 p. 12

"*B*"

HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY ANY PARTY.

Signature: (Signed Electronically), Signature Date: 7/27/2015

You can contact us for purposes of this Agreement at P.O. Box 3999 St. Joseph, MO 64503-0999. For customer service our telephone number is 1-844-825-2608.

STATE LAW NOTICES:

CALIFORNIA RESIDENTS: A married applicant may apply for a separate account. If we take any adverse action as defined by § 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, you have the right to obtain within 60 days a free copy of your consumer credit report from the consumer reporting agency who furnished the consumer credit report and from any other consumer credit reporting agency that complies and maintains files on consumers on a nationwide basis.

CALIFORNIA and UTAH RESIDENTS: As required by California and Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

KANSAS (and IOWA residents if the principal amount of this loan exceeds $20,000): Important: read before signing. The terms of this agreement should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this written contract may be legally enforced. We may change the terms of this agreement only by another written agreement.

MARYLAND RESIDENTS: To the extent that any court determines that this Agreement is subject to Maryland law concerning consumer credit, you and we agree and elect to make this loan pursuant to Subtitle 10 (Credit Grantor Closed End Credit provisions) of Title 12 of the Maryland Commercial Law Article only to the extent that such provisions are not inconsistent with our authority under federal law (12 U.S.C. § 1831d) and related regulations and interpretations, which authority we expressly reserve.

MASSACHUSETTS RESIDENTS: Massachusetts law prohibits discrimination based upon marital status or sexual orientation.

MISSOURI AND NEBRASKA RESIDENTS: Oral loan agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of such debt, including promises to extend or renew such debt, are not enforceable. To protect you and us and any holder of this agreement from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NEW JERSEY RESIDENTS: The paragraph headings of the Agreement are a table of contents and not contract terms. Portions of this Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Agreement, actions or practices (i) which are or may be permitted by "applicable law" are permitted by New

Exhibit 1 p. 13



Jersey law, and (ii) that may be or will be taken by us unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND and VERMONT RESIDENTS: You understand and agree that we may obtain a consumer credit report in connection with this application and in connection with any update, renewals for extension of any credit as a result of this application. If you ask, you will be informed whether or not such a report was obtained, and if so, the name and address of the agency that furnished the report. You also understand and agree that Lender may obtain a consumer credit report in connection with the review or collection of any loan made to you as a result of this application or for other legitimate purposes related to such loans.

NORTH DAKOTA RESIDENTS ONLY: Notice: Money brokers are licensed and regulated by the department of financial institutions, 2000 Schafer Street, Suite G, Bismarck, North Dakota 58501-1204. The Department of Financial Institutions has not passed on the merits of the contract and licensing does not constitute an approval of the terms or of the broker's ability to arrange any loan. Complaints regarding the services of money brokers should be directed to the Department of Financial Institutions. (NDAC 13-05-01-09)

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

WISCONSIN RESIDENTS: For married Wisconsin residents, your signature confirms that this loan obligation is being incurred in the interest of your marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under § 766.59 of the Wisconsin statutes or court decree under § 766.70 adversely affects our interest unless, prior to the time that the loan is approved, we are furnished with a copy of the marital property agreement, statement, or decree or have actual knowledge of the adverse provision. If this loan for which you are applying is granted, you will notify us if you have a spouse who needs to receive notification that credit has been extended to you.

Exhibit 1 p. 14



| acct_num | first_name | last_nam | co_balance | co_balance | co_bala | trans_num | trans_date | trans_code | description |
|---|---|---|---|---|---|---|---|---|---|
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 68372494 | 07/28/15 | 11100 | Boarding |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 68609948 | 09/01/15 | 21100 | Scheduled |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 68806899 | 10/01/15 | 21100 | Scheduled |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 69012689 | 11/01/15 | 21100 | Scheduled |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 69271116 | 12/01/15 | 21100 | Scheduled |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 69730183 | 01/01/16 | 21100 | Scheduled |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 69987090 | 02/01/16 | 21100 | Scheduled |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 70194148 | 03/01/16 | 21100 | Scheduled |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 70356811 | 03/23/16 | 21100 | Scheduled |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 70607651 | 04/29/16 | 21100 | Scheduled |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 70812739 | 05/26/16 | 21100 | Scheduled |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 71054809 | 06/30/16 | 21100 | Scheduled |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 71282244 | 07/29/16 | 21100 | Scheduled |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 71499955 | 08/25/16 | 21100 | Scheduled |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 71757114 | 09/29/16 | 21100 | Scheduled |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 72008500 | 10/30/16 | 21100 | Scheduled |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 72297739 | 12/01/16 | 21100 | Scheduled |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 72523868 | 12/31/16 | 21100 | Scheduled |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 74022115 | 06/04/17 | 32000 | Late Fee As |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 74043675 | 06/06/17 | 11270 | Fees Due a |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 74561977 | 07/17/17 | 11270 | Fees Due a |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 74562651 | 07/17/17 | 32000 | Late Fee As |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 74573462 | 07/18/17 | 11270 | Fees Due a |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 74905828 | 08/17/17 | 11270 | Fees Due a |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 74906736 | 08/17/17 | 32000 | Late Fee As |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 75245740 | 09/17/17 | 32000 | Late Fee As |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 75373450 | 09/30/17 | 11250 | Interest at |
| 0458 | Melvin | Ray | 24654.4 | 5484.53 | 60 | 75373451 | 09/30/17 | 11270 | Fees Due a |

*"C"*

| amount_A | non_cash | reversal_ | effect_date | Princ_bal_ | Principal_p | interest_p | Princ_bal_ | interest | late_fee |
|---|---|---|---|---|---|---|---|---|---|
| 30000 | 1 | | 28-Jul-15 | 0 | 30000 | 0 | 30000 | 0 | 0 |
| -835.92 | 0 | | 1-Sep-15 | 30000 | -190.67 | -645.25 | 29809.33 | 0 | 0 |
| -835.92 | 0 | | 1-Oct-15 | 29809.33 | -286.37 | -549.55 | 29522.96 | 0 | 0 |
| -835.92 | 0 | | 1-Nov-15 | 29522.96 | -273.5 | -562.42 | 29249.46 | 0 | 0 |
| -835.92 | 0 | | 1-Dec-15 | 29249.46 | -296.69 | -539.23 | 28952.77 | 0 | 0 |
| -835.92 | 0 | | 1-Jan-16 | 28952.77 | -284.37 | -551.55 | 28668.4 | 0 | 0 |
| -835.92 | 0 | | 1-Feb-16 | 28668.4 | -289.78 | -546.14 | 28378.62 | 0 | 0 |
| -835.92 | 0 | | 1-Mar-16 | 28378.62 | -330.18 | -505.74 | 28048.44 | 0 | 0 |
| -835.92 | 0 | | 23-Mar-16 | 28048.44 | -456.72 | -379.2 | 27591.72 | 0 | 0 |
| -835.92 | 0 | | 29-Apr-16 | 27591.72 | -208.56 | -627.36 | 27383.16 | 0 | 0 |
| -835.92 | 0 | | 26-May-16 | 27383.16 | -381.58 | -454.34 | 27001.58 | 0 | 0 |
| -835.92 | 0 | | 30-Jun-16 | 27001.58 | -255.16 | -580.76 | 26746.42 | 0 | 0 |
| -835.92 | 0 | | 29-Jul-16 | 26746.42 | -359.27 | -476.65 | 26387.15 | 0 | 0 |
| -835.92 | 0 | | 25-Aug-16 | 26387.15 | -398.1 | -437.82 | 25989.05 | 0 | 0 |
| -835.92 | 0 | | 29-Sep-16 | 25989.05 | -276.94 | -558.98 | 25712.11 | 0 | 0 |
| -835.92 | 0 | | 30-Oct-16 | 25712.11 | -346.1 | -489.82 | 25366.01 | 0 | 0 |
| -835.92 | 0 | | 1-Dec-16 | 25366.01 | -337.11 | -498.81 | 25028.9 | 0 | 0 |
| -835.92 | 0 | | 31-Dec-16 | 25028.9 | -374.5 | -461.42 | 24654.4 | 0 | 0 |
| 15 | 1 | | 4-Jun-17 | 24654.4 | 0 | 0 | 24654.4 | 0 | 15 |
| 15 | 1 | | 5-Jun-17 | 24654.4 | 0 | 0 | 24654.4 | 0 | 0 |
| 15 | 1 | | 16-Jul-17 | 24654.4 | 0 | 0 | 24654.4 | 0 | 0 |
| 15 | 1 | | 17-Jul-17 | 24654.4 | 0 | 0 | 24654.4 | 0 | 15 |
| 30 | 1 | | 17-Jul-17 | 24654.4 | 0 | 0 | 24654.4 | 0 | 0 |
| 30 | 1 | | 16-Aug-17 | 24654.4 | 0 | 0 | 24654.4 | 0 | 0 |
| 15 | 1 | | 17-Aug-17 | 24654.4 | 0 | 0 | 24654.4 | 0 | 15 |
| 15 | 1 | | 17-Sep-17 | 24654.4 | 0 | 0 | 24654.4 | 0 | 15 |
| 5484.53 | 1 | | 30-Sep-17 | 24654.4 | 0 | 0 | 24654.4 | 5,484.53 | 0 |
| 60 | 1 | | 30-Sep-17 | 24654.4 | 0 | 0 | 24654.4 | 0 | 0 |

Exhibit 1 p. 16

"C"

| nsf_fee | collect_ex | other | Investor |
|---|---|---|---|
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |
| 0 | 0 | 0 | citi |



**BILL OF SALE**

**DATED AS OF THE CLOSING DATE**

Seller(s) listed below (each a "Seller" and, collectively the "Sellers"), for value received and pursuant to the Account Purchase Agreement, dated as of July 22, 2020 (the "Agreement"), between Marlette Servicing LLC, as Servicer on behalf of Sellers identified therein, and UHG I LLC as buyer, hereby assign(s), effective as of the Closing Date(s) listed on the Attachment hereto, all rights, title and interest of Seller(s) (and including for the avoidance of doubt, all rights, title and interest of the trustee or other agent of each Seller listed on the Attachment, if any, not in their individual capacities, but solely in their capacity of trustee or other agent of the Seller, who is holding legal title to the Accounts for the benefit of the Seller in such capacity) in and to those Accounts listed on the Attachment and identified in the attached loan file(s). Capitalized terms used herein and not otherwise defined shall have the meanings scribed to such terms in the Agreement.

SELLER(S):

Clover Consumer Loan Trust I
Clover Consumer Loan Trust II
CRB Acquisition Trust 2015-1
Cross River Bank
CVI MF Grantor Trust I
CVI MF Grantor Trust III
Delaware Loan Purchase Trust - I
Goldman Sachs Bank USA
Hudson River Trust 2017-1
Hudson River Trust 2017-2
Hudson River Trust 2017-3
Hudson River Trust 2017-4
Marlette Funding Consumer Loan Trust
Marlette Funding Grantor Trust 2017-1
Marlette Funding Grantor Trust 2017-2
Marlette Funding Grantor Trust 2017-3
Marlette Funding Grantor Trust 2018-1
Pacific Funding Trust 1005
QJPB Holdings LTD
Trallem Trust

By:     Marlette Servicing, LLC,
         as Attorney in Fact

By: _____

Title: _____

Date: As of the Closing Date listed on the Attachment

Exhibit 1 p. 18

subpool_id
12

app_fico

fico_score_update

loan_owner
CIGPF I Corp

prl_acctno
30350458

first_name
Melvin

last_name
Ray

suffix

phys_street_1
1360 CLEVELAND HEIGHTS BLVD

phys_street_2

phys_city
CLEVELAND HTS

phys_state
OH

phys_zip
44121

mail_street_1
4940 S WENDLER DR SUITE 101

mail_street_2

mail_city
TEMPE

mail_state
AZ

mail_zip
85282

home_phone

mobile_phone

employer_name
CLEVELAND CLINIC

employer_phone
2164442200

last_payment_amount
835.92

bankrupt_type

original_bal
30000

ssn

last_payment_dt
12/31/2016 0:00

open_dt
7/28/2015 0:00

app_int_rate
22.43

app_apr
24.96

charge_off_dt
9/30/2017 0:00

dob
1951 0:00

gross_co_bal
30198.93

principal_co_bal
24654.4

current_balance
30198.93

co_balance_principal
24654.4

co_balance_int
5484.53

co_balance_fees
60

originating_bank
Cross River Bank

merchant
Marlett

loan_reason

first_pay_defult

Electronically Filed 06/06/2022 18:58 / AFFIDAVIT / CV 22 963902 / Confirmation Nbr. 2571869 / CLBXA

Exhibit 1 p. 19

first_day_delq
6/2/2017 0:00

app_id
81bc211a-6058-43f8-9f73-
a4e001802e6a

origin_term
60

ip_address
71.66.119.169

app_req_loan_amt
30000

channel
Pre-Screen

investor
citi

pre_legal_flag
0

email_address
melbr8@roadrunner.com

debt_settl_flag
1

prev_sold_flag

debt_settl_comp
FREEDOM DEBT RELIEF

attorney_dt
1/1/2000 0:00

attorney_type

firm_name

attorney_name

vendor_id
4

mob
26

age
68

loan_id
76911

sell
1

bank_name
PNC BANK, OHIO

bank_routing

bank_acct_nbr

payment_units_post_co

payment_dollars_post_co

nsf_units_post_co

nsf_dollars_post_co

receiving_mailed_statements
NO

Department of Defense Manpower Data Center

 *"E"*

Results as of : Jun-01-2021 11:39:58 AM

SCRA 6.8



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:
Birth Date:
Last Name:         RAY
First Name:        MELVIN
Middle Name:
Status As Of:      Jun-01-2021
Certificate ID:    FK9Q19TKLMHXCH1

| On Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individual's active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

Exhibit 1 p. 21