UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MELVIN RAY, | ) | CASE NO. 22-cv-01265 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | **MOTION FOR SUMMARY** |
| BREE W. OGLE, *et al.*, | ) | **JUDGMENT** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendants Bree W. Ogle and Atkins & Ogle Law Offices, LC move this Court for summary judgment pursuant to Fed. R. Civ. P. 56(c).

A Brief in Support is attached.

                 Respectfully submitted,

                 */s/ James O'Connor*
                 James O'Connor (0063428)
                 Gregory G. Guice (0076524)
                 Reminger Co., LPA
                 101 West Prospect Avenue, Suite 1400
                 Cleveland, Ohio 44115
                 (216) 687-1311
                 joconnor@reminger.com
                 gguice@reminger.com
                 *Attorneys for Defendants Bree W. Ogle and*
                 *Atkins & Ogle Law Offices, LC*

**BRIEF IN SUPPORT**

**I.     INTRODUCTION**

On June 8, 2022, Plaintiff Melvin Ray filed this lawsuit against Defendants Bree Ogle and Atkins & Ogle Law Offices (the "Firm") asserting the following causes of action:

(Count 1) violations of the FDCPA;

(Count 2) violations of the OCSPA;

(Count 3) commission of criminal acts;

(Count 4) fraud; and

(Count 5) negligence.

Defendants submit that all five Counts fail as a matter of law.

Plaintiff's primary FDCPA claim is based on Defendants' filing of an affidavit in support of a collection lawsuit. Plaintiff claims that the affidavit was false, deceptive, misleading, unfair and unconscionable under 15 U.S.C. 1692(e)-(f). In fact, however, the affidavit properly identified the plaintiff/current debt holder (UHG I), the original creditor (Cross River Bank), the amount of the debt, and that the affiant was an employee of the plaintiff UHG I. Indeed, although all of the facts asserted in the affidavit were true and correct, the signature block inadvertently substituted the current debt owner with the original creditor. Thus, while the signature block contained a mistake, the mistake was not "materially false," deceptive, abusive, misleading, unfair or unconscionable and, as such, it did not violate the FDCPA.

Moreover, even if it is assumed that the signature block constituted a violation, Plaintiff's claim fails because Defendants made a bona fide error as the mistake was not

2

intentional, and it occurred notwithstanding the maintenance procedures reasonably adapted to avoid any such error.

As to Plaintiff's other FDCPA claims, that Defendants filed a time barred lawsuit, misrepresented the assignment/ownership of the loan, and reported inaccurate credit information, the indisputable facts show that these claims are without merit and fail as a matter of law.

Relative to the OCSPA claims, these all fail for the same exact reasons that Plaintiff's FDCPA claims fail. Further, the bona fide error defense would preclude Plaintiff's recovery of both statutory damages and attorneys' fees.

Finally, Plaintiff has also seized on the inadvertent mistake in the signature block to assert a slew of common law claims, alleging Defendants have acted negligently, fraudulently, and criminally. Defendants submit that all three of these claims fail because they improperly assert third-party legal malpractice claims in the absence of privity or malice. Also, Plaintiff's claims of fraud and criminal acts fail because the indisputable facts prove that the mistake made by Defendants was not intentional, and that Plaintiff's other allegations of misconduct by Defendants are meritless.

## II.    STATEMENT OF FACTS

In July 2015, Plaintiff Melvin Ray sought and received a $30,000 loan from Best Egg, an online lending platform. (Ex. 1, Deposition of Melvin Ray at p. 19:17-21). Best Egg offers personal loans through banking entities, including Cross River Bank, who provided funding for Plaintiff's loan. (Ex. 2, Affidavit of Bree Ogle at ¶ 4). In 2020, Cross River Bank sold Plaintiff's loan to UHG I. (Ex. 1, Ray Depo at p. 97 and Ex. 1-J attached

thereto). Plaintiff was notified of this sale via correspondence from Best Egg. (Ex. 1, Ray Depo at p. 46 and Ex. 1-D attached thereto).

On June 11, 2021, Defendants filed a lawsuit against Plaintiff in the Cuyahoga County Court of Common Pleas, Case No. CV-21-948648 (the "underlying matter"), seeking to collect on the overdue loan. (Ex. 1, Ray Depo at p. 97 and Ex. 1-J attached thereto). The collection complaint was supported by the affidavit testimony of Kaelyn Kowalik, an employee of UHG I. (*Id.*). The affidavit's header properly identified UHG I as the current account holder, and Cross River Bank as the original creditor. (Ex. 2, Ogle Aff. at ¶ 10). All of the factual statements in the affidavit were true and accurate, including the fact that Ms. Kowalik serves as a bookkeeper for the plaintiff UHG I. (*Id.* at ¶ 11). Nevertheless, the signature block for Ms. Kowalik contained a typographical error, wherein the name Cross River Bank (the original creditor) was inadvertently included instead of UHG I (the current owner of the debt). (*Id.* at ¶ 12).

Defendant Bree Ogle is a shareholder of Atkins & Ogle, a law firm that primarily handles debt collection actions. (Ex. 3, Deposition of Bree Ogle at p. 8). When preparing affidavits to be filed in support of a debt collection complaint, the Firm utilizes several levels of automation and review to ensure its filings are accurate and compliant with the FDCPA. (Ex. 2, Ogle Aff. at ¶¶ 5-9). First, affidavits are prepared via an automated form generation system, CollectMax, which permits names and other information from a spreadsheet to automatically populate the affidavits. (*Id.*). An affidavit is then subject to multiple levels of review, first by the individual who is responsible for its preparation, then by an experienced staff member who prepares the pleading, and then by Ms. Ogle prior to

4

signing the pleadings pursuant to Ohio Civil Rule 11. (*Id.*).

Upon investigation, Defendants determined that the typographical error in the signature block was likely caused by a former employee, Shyenna Wheeler, who apparently noticed that Cross River Bank had been erroneously labeled as the current account holder/plaintiff. (Ex. 3, Ogle Depo. at pp. 74-77). While the error should have been remedied by revising the spreadsheet, it appears that Ms. Wheeler instead attempted to revise it manually, and corrected all errors in the affidavit save for the one identifying Cross River Bank in the signature block. (*Id.* at pp. 74-77).

Thereafter, the affidavit was subject to two additional reviews, once by Jennifer Spade, an experienced staff member who prepared the pleading, and then by Ms. Ogle. (*Id.* at pp. 76:13-79:11). Despite these thorough reviews, the mistake in the signature block was not detected, and Ms. Ogle signed the complaint pursuant to Civil Rule 11, believing and certifying that to the best of her knowledge, information, and belief there were good grounds to support the claims asserted against Plaintiff. (Ex. 2, Ogle Aff. at ¶¶ 13-14).

In his deposition, Plaintiff admitted that he has no evidence that any misrepresentations allegedly made by Defendants were intentionally or knowingly made:

> Q. There were certain things in the complaint and the affidavit I showed you that you indicated that you believed might be misrepresentations, like Cross River Bank, right?
> A. Uh-huh.
>
> Q. Okay. If there was anything in the complaint or the affidavit that wasn't accurate, that wasn't truthful, do you have any evidence that the Defendants put that information in the complaint or the affidavit intentionally, with the intention to -- or knowing that it was not truthful? Let's say it that way.
> MR. MISRA: Objection.
> A. I don't know.

>Q. Okay. And maybe I can ask it this way. Do you have any evidence that the Defendants intentionally made any misrepresentations in the complaint they filed against you?
>
>MR. MISRA: Objection.
>
>A. I don't know. (Ex 1, Ray Depo. at pp. 134-35).

### III. LEGAL ANALYSIS

#### A. PLAINTIFF'S FDCPA CLAIMS FAIL AS A MATTER OF LAW

##### 1. Defendants Did Not Violate The FDCPA By Filing The Affidavit

In paragraphs 92, 96 and 98 of the Complaint, Plaintiff alleges Defendants violated the FDCPA by filing a false affidavit. Specifically, Plaintiff claims that Defendants violated 15 U.S.C. § 1692(e)-(f) in attempting to collect a debt. 15 U.S.C. § 1692(e) provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," and § 1692(f) similarly provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

Congress enacted the FDCPA to eliminate "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). Under the Act, debt collectors are prohibited from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012). Courts apply the "least sophisticated consumer" test to determine whether a debt collector's actions are false, deceptive, or misleading under 15 U.S.C. § 1692e. *Id.* This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008). To satisfy this standard, however, courts "have also held that a statement must

6

be *materially* false or misleading to violate Section 1692e . . . [which] simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." *Wallace v. Wash. Mut. Bank, F.A.,* 683 F.3d at 326-27 (emphasis in original).

Here, there is no dispute that the debt was valid; that UHG I was properly identified in the affidavit as the owner of the debt and plaintiff; that Cross River Bank was properly identified as the original debt holder; that all the factual statements made in the affidavit were true and correct; and that the affiant – Kaelyn Kowalik – was identified as an employee of UHG I. It was only in the signature block that the current debt owner and the original debt holder were inadvertently switched. This mistake, in the signature block alone, did not negate the truthfulness or correctness of the affidavit and, thus, it was not "materially false" or "misleading," nor was it deceptive, abusive, unfair or unconscionable. Indeed, the evidence shows that Plaintiff was not mislead about anything related to the debt as he admitted in deposition that he both incurred it and that he failed to pay it. Thus, because Plaintiff has failed to allege or present any evidence identifying a "materially false" representation, Defendants submit that Plaintiff's claim fails as a matter of law.

      **2.    Plaintiff's Claim That Defendants Filed A False Affidavit Is Barred By The Bona Fide Error Defense**

Even if it is assumed for the sake of argument that the signature block constituted a violation of the FDCPA, Defendants are not liable because it was the result of a bone fide error, i.e., the violation was not intentional and occurred notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. 15 U.S.C. § 1692k(c) provides

that a debt collector may not be liable if the violation was the result of a "bona fide error:"

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that *the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error*. (Emphasis added).

Thus, the bona fide error defense requires a debt collector to prove that: (1) the violation was not intentional; (2) the violation was a result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 577 (2010). The Supreme Court has further indicated that "the broad statutory requirement of procedures reasonably designed to avoid 'any' bona fide error indicates that the relevant procedures are ones that help to avoid errors like clerical or factual mistakes." *Id.* at 587. The procedures referred to in the FDCPA are "more naturally read to apply to processes that have mechanical or other such "regular orderly" steps to avoid mistakes." *Id.*, (citing Webster's Third New International Dictionary 1807 (1976) (defining "procedure" as "a series of steps followed in a regular orderly definite way.")).

Here, it is unquestionable that the mistake in the signature block occurred unintentionally. Again, there is no dispute that the debt itself was valid; that UHG I was properly identified in the affidavit as the owner of the debt and plaintiff; that Cross River Bank was properly identified as the original debt holder; that all the factual statements made in the affidavit were true and correct; and that the affiant – Kaelyn Kowalik – was identified as an employee of UHG I. It was only in the signature block that the current debt owner and the original debt holder were inadvertently switched. Notably, there was

8

no reason the switch would have been made intentionally, as it did not provide any benefit whatsoever to Defendants, i.e., it did not increase either the validity or the amount of the debt. Moreover, Plaintiff conceded during his deposition that he has no evidence that would demonstrate Defendants intentionally or knowingly mislabeled the signature block.

Defendant Ogle further testified that the error was not intentional and thoroughly explained the process by which the error likely occurred. In complying with the FDCPA, Defendants had in place a process for the generation and review of affidavits that was expressly meant to prevent errors such as this one. First, Defendants' affidavits are generated by way of a spreadsheet system that inserts party names and other values, such as the amount of a debt, to ensure uniformity and correctness. Once those pleadings are generated, they are subject to a three-level review process, first by the individual who generates the document, next by an experienced staff member who prepares the pleading, and then by the responsible attorney – in this case Ms. Ogle – who signs the pleading pursuant to Ohio Rule of Civil Procedure 11, certifying that to the best of her knowledge, information, and belief there are good grounds to support the claims. Simply, in this case, notwithstanding the maintenance of these reasonable and comprehensive procedures adapted to avoid the error, a mistake was made.

While the Firm's system and procedures are meant to prevent errors, Defendants later determined that a former employee apparently attempted to correct an error in the affidavit at issue by directly editing its text, as opposed to changing the value in the spreadsheet. This resulted in the information at the top of the affidavit, and in the affidavit itself, being correct, but the employee apparently failed to also revise the signature block.

Though it was subject to multiple levels of review, including by the affiant at UHG I when it was signed, the mistake was missed, and the affidavit was inadvertently filed with the incorrect entity having been identified in the signature block. Again though, despite this error, there is no dispute between the parties: (1) that the amount of the debt was accurate; (2) that the current and original debt holders were properly identified; (3) that the factual statements in the affidavit were correct; and (4) that the affiant was an employee of the current debt holder as stated in the affidavit.

As such, the error was indisputably a bona fide error, as the mistake was only typographical, was not intentional, and it occurred despite there being a reasonable system and review process in place, that was adapted to avoid the error. Accordingly, Defendants submit that because there are no remaining issues of material fact, they are entitled to judgment as a matter of law on this FDCPA claim, as they cannot be liable under the statutory framework for bona fide errors.

### 3. Plaintiff's Other FDCPA Claims Fail As A Matter Of Law

With no factual support whatsoever, Plaintiff's Complaint also alleges that Defendants filed a time barred lawsuit against him (Complaint at ¶ 94); misrepresented the assignment/ownership rights on the loan and/or competency of UHG I to file suit (*Id.* at ¶¶ 93 & 95); and reported or caused to be reported inaccurate credit information (*Id.* at ¶ 97). The undisputed facts show, however, that all of these claims are without merit and fail as a matter of law.

First, in 2017, when Plaintiff breached his contract with Cross River Bank, the Ohio statute of limitations was eight years and, as such, the claim will not be barred by the statute

10

of limitations until 2025. (Ex. 2, Ogle Aff. at ¶ 15). Second, at the time the debt collection lawsuit was filed, the debt was owned by UHG I, as indicated by the assignment attached to the collection complaint as Exhibit 1-D. (*Id.* at ¶ 16; *see also* Ex. 1, Ray Depo at 97 and Exhibit 1-J attached thereto). And third, Defendants do not report credit information to anyone, including credit bureaus, nor do Defendants provide credit information to anyone that reports to credit bureaus. (*Id.* at ¶ 17).

### B. PLAINTIFF'S OCSPA CLAIMS FAIL AS A MATTER OF LAW

#### 1. Defendants Did Not Violate The OCSPA By Filing the Affidavit

Plaintiff's Complaint asserts that as with Defendants' alleged violation of the FDCPA, Defendants have also violated the OCSPA. Nevertheless, as shown above, the affidavit at issue was not materially false, deceptive, abusive, misleading, unfair or unconscionable. As such, for the very same reasons that Plaintiff's FDCPA claim fails as a matter of law, so also does his OCSPA claim fail.

#### 2. The OCSPA's Bona Fide Error Defense Precludes Plaintiff's Recovery Of Statutory Damages And Attorneys' Fees

The OCSPA similarly provides for a bone fide error defense. *See* R.C. 1345.11(A). Like the FDCPA, this exception applies when "a supplier shows by a preponderance of the evidence that a violation resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error." *Id*.

If a supplier can demonstrate that a violation resulted from a bona fide error, which occurred despite the supplier's maintenance of procedures to avoid such errors, the consumer cannot recover attorneys' fees or money exceeding the amount of his actual

11

damages resulting from the violation. R.C. 1345.11(A); *see also Swift v. Allied Pest Control, Inc.*, 2001-Ohio-1462, *8 (2d Dist.); *Jones v. Diamond Warranty Corp.*, 2011-Ohio-6744, ¶ 18 (5th Dist.).

Here, as discussed at length above, it is indisputable that the error in the signature block, i.e., the substitution of Cross River Bank for UHG I, was a bona fide error. As such, Defendants submit that Plaintiff is barred from recovering both statutory damages and attorneys' fees.

### 3. Plaintiff's Other OCSPA Claims Fail As A Matter Of Law

As with the FDCPA, Plaintiff alleges that Defendants violated the OCSPA (Complaint at ⁋ 103) by filing a time barred lawsuit; misrepresenting the assignment/ownership rights on the loan; and reporting or causing to be reported inaccurate credit information. Nevertheless, these claims fail for the same reasons that Plaintiff's FDCPA claims fail, i.e., the indisputable evidence shows that the collection complaint was not time barred; that UHG I was the owner of the debt; and that Defendants to not report credit information. (Ex. 2, Ogle Aff. at ⁋⁋ 15-17).

### C. PLAINTIFF'S COMMON LAW CLAIMS ARE THIRD-PARTY LEGAL MALPRACTICE CLAIMS, WHICH ARE DISALLOWED UNDER OHIO LAW

Plaintiff's remaining claims (negligence, fraud, and criminal acts) are improper because they constitute third-party legal malpractice claims. When a party asserts a claim that arises out of the manner in which an attorney represents a client within the attorney-client relationship, regardless of the names affixed to the theories of recovery or causes of action, the claims are for legal malpractice. *See Muir v. Hadler Real Estate Management*

12

*Co.*, 4 Ohio App.3d 89, 90 (1982) ("Malpractice by any other name still constitutes malpractice"). Therefore, a trial court will construe a complaint to be for legal malpractice where the gist of the complaint sounds in malpractice, regardless of the labels given to the causes of actions. *See Polivka v. Cox*, 2002-Ohio-2420, at ¶ 2, fn. 1 (10th Dist.); *Cleveland Constr., Inc. v. Roetzel Andress, L.P.A*., 2011-Ohio-1237, ¶ 24 (8th Dist.) ("Claims arising out of an attorney's representation, regardless of the label attached, constitute legal malpractice claims…").

With this in mind, "an attorney is immune from liability to third parties as a result of having performed services on behalf of a client, in good faith, unless the third party is in privity with the client for whom the legal services were performed, or unless the attorney acts with malice." *Simon v. Zipperstein*, 32 Ohio St.3d 74, 76 (1987). This is because "[t]he obligation of an attorney is to direct his attention to the needs of the client, not to the needs of a third party not in privity with the client." *Id.* at 76. In determining privity, "the trial court must first examine the interest that the original attorney-client relationship was intended to protect and then compare it to the interest of the third person bringing suit for the alleged legal malpractice. Privity exists if the interest of the client is concurrent with the interest of the third person." *Peleg v. Spitz*, 2007-Ohio-6304, ¶ 13 (8th Dist.), quoting *Sayyah v. Cutrell*, 143 Ohio App.3d 102, 112 (12th Dist. 2001).

Ohio is among the states that apply "a strict privity requirement." *Meisler v. Weinberg*, 2017-Ohio-1563, ¶ 10 (8th Dist.). The *Meisler* court explained that public policy justifies adherence to the strict privity rule because: (1) the rule ensures that attorneys may represent their clients without threat of suit from third parties; (2) without

13

the rule, an attorney could have conflicting duties and divided loyalties; and (3) there would be unlimited potential liability for the lawyer. *Id*.

Instructive here, one Ohio court determined that an ex-husband's attempt to sue his former wife's attorney for conversion unavoidably sounded in legal malpractice. *See Moffitt v. Litteral*, 2002-Ohio-4973 (2d Dist.). The court determined that even if the transfer of title of the ex-husband's truck was unlawful, the attorney acted in good faith within the bounds of the attorney-client relationship and, as a result, he was protected from action by third parties. *Id*. at 82.

Here, first, it is indisputable that Defendants never represented Plaintiff. (Ex. 1, Ray Depo at 135:8-13). Second, Plaintiff clearly was not in privity with UHG I, as UHG I was suing Plaintiff on a defaulted loan. (*Id.* at p. 97 and Ex. 1-J attached thereto). Finally, Defendants have presented ample evidence that the error in the affidavit was not intentional, and Plaintiff conceded in his deposition that he had no evidence which would demonstrate that the error made was intentional or intentionally misleading.

As such, it is indisputable that Plaintiff was not a client of Defendants; that Plaintiff was not in privity of interest with UHG I; and that Defendants did not act intentionally or with malice. Consequently, because Plaintiff's common law claims against Defendants arise out of Defendants' legal representation of UHG I, Plaintiff's claims are improper third-party legal malpractice claims, and they fail as a matter of law.

### D. **PLAINTIFF'S FRAUD AND CRIMINAL ACTS CLAIMS FAIL FOR LACK OF INTENTIONAL OR WRONGFUL CONDUCT**

Two of Plaintiff's legal malpractice claims – styled as ones for fraud and for criminal acts – also fail because the indisputable fact is that Defendants did not engage in

14

any intentional wrongdoing.  The elements of a common law fraud claim are (1) a representation of fact; (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or with utter disregard and recklessness as to whether it is true or false; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the misrepresentation; and (6) resulting injury caused by the reliance.  *See Cohen v. Lamko, Inc*., 10 Ohio St.3d 167, 169 (1984).  All of these elements must be present to find fraud.  *See Westfield Ins. v. HULS Am.,* 128 Ohio App.3d 270, 280 (10th Dist.1998).

With regards to his criminal acts claim, Plaintiff alleges that Defendants committed numerous crimes in prosecuting the underlying action against him:

> Defendants violated Ohio and Federal criminal statutes, as well as the common law, in committing acts of perjury, subornation of perjury, corruption of a witness, theft, falsification, tampering with evidence, extortion, intimidation, receiving stolen property, engaging in a pattern of corrupt activity, mail fraud and wire fraud when they employed a pattern and practice of filing invalid, unjustified lawsuits, with inadequate investigation of the debt before filing the lawsuit, with the use of false documents and false or misleading representation, with the improper motive of cheating unsuspecting or unsophisticated consumers.  (ECF # 1-1, ¶ 108).

While the above presents a colorful list of allegations, each and every claim revolves around the alleged "intentional" use of false documents and representations, with purportedly improper motives.

Here, Defendants have presented testimony from Bree Ogle, the attorney who reviewed the affidavit, who confirmed that the inaccuracy in the affidavit was an unintentional typographical error, and that all other averments in the affidavit, including the amount of the debt at issue, were true and accurate.  This is not disputed by Plaintiff.  As shown, Plaintiff admitted in deposition that he cannot present any evidence that

15

Defendants intentionally falsified the affidavit. Further, as to Plaintiff's other claims, i.e., that Defendant misrepresented the chain of title and/or ownership of the loan, as shown above, the indisputable evidence is that at the time the collection action was filed, UHG I was the owner of the loan at issue. (Ex. 2, Ogle Aff. at ¶ 16).

## IV.  CONCLUSION

For the foregoing reasons, Defendants submit that Plaintiff's Complaint fails in its entirety. As such, Defendants respectfully request that this Court enter an order granting Defendants' motion for summary judgment.

Respectfully submitted,

 */s/ James O'Connor*
James O'Connor (0063428)
Gregory G. Guice (0076524)
Reminger Co., LPA
101 West Prospect Avenue, Suite 1400
Cleveland, Ohio 44115
(216) 687-1311
joconnor@reminger.com
gguice@reminger.com
*Attorneys for Defendants Bree W. Ogle and Atkins & Ogle Law Offices, LC*

## CERTIFICATE OF SERVICE

I certify that on February 28, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

 */s/ James O'Connor*
James O'Connor (0063428)

16