IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Melvin Ray | ) | Case No.: 22-cv-01265-PAG |
| | ) | |
| Plaintiff | ) | Judge Patricia A. Gaughan |
| | ) | |
| **vs**. | ) | Magistrate Judge Thomas M. Parker |
| Bree W. Ogle, *et al*. | ) | |
| | ) | |
| Defendants. | ) | Plaintiff's Opposition to Defendants' Motion |
| | ) | for Summary Judgment (Doc. # 11) |

# Table of Contents

Table of Authorities ............................................................................................................. iii

I.   Statement of Issues ................................................................................................. 1

II.  Summary of the Argument ...................................................................................... 1

III. Standard of Review ................................................................................................. 2

IV.  Relevant Facts ........................................................................................................ 4

     A.  Affidavit of Bree Ogle ..................................................................................... 5

     B.  Other Assertions in defendants' "Statement of Facts" are unsupported. .................. 10

     C.  Alleged Typographical Error in the Kowalik Affidavit was Intentional. ........................ 11

     D.  Falsification of the Kowalik Affidavit is not an isolated event. ..................................... 13

     E.  The false representation as to affiliation with Cross River Bank is only one of
         multiple false representations in the Kowalik Affidavit. ................................................ 15

     F.  Defendants' assertion that Mr. Ray "admitted that he has no evidence" of
         intentional misrepresentation is misleading. ................................................................ 16

V.   Argument ................................................................................................................ 17

     A.  Filing a false affidavit may be a violation of the FDCPA. ............................................. 17

B. Defendants' conduct was intentional and they are not entitled to the Bona Fide Error defense. ...........................................................................20

C. Defendants filed a time-barred lawsuit. ........................................................23

D. Defendants' conduct may violate the OCSPA .............................................25

E. Mr. Ray's common law claims are not "legal malpractice claims" ...........26

F. Defendants' conduct was intentional and sufficient to support Mr. Ray's fraud and criminal acts claims. .........................................................................28

VI. Conclusion...............................................................................................................30

# TABLE OF AUTHORITIES

**CASES**

Alpert v. United States, 481 F.3d 404 (6th Cir. 2007), ....................................................... 3

Abraham v. Natl. City Bank Corp. (1990), 50 Ohio St.3d 175 ...................................... 24

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). ................................................ 2, 3

Back v. Nestle USA, Inc., 694 F.3d 571 (6th Cir. 2012) ..................................................... 3

Bailey v. Floyd County Board of Education, 106 F.3d 135 (6th Cir. 1997)..................... 4

Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999 (9th Cir.1990)). ............................. 3

Becker v. Montgomery, Lynch, N.D. Ohio No. Civ.A. 1:02CV 874, 2003 WL 23335929, *2 (Feb. 26, 2003). ...................................................................................................................... 25

Bennett v. City of Eastpointe, 410 F.3d 810 (6th Cir. 2005). ......................................... 3

Boyd v. Georgia, 512 F. App'x 915 (11th Cir. 2013) ...................................................... 14

Celotex Corp. v. Catrett, 477 U.S. 317 (1986);................................................................. 2

Citizens Fed. Bank, F.S.B. v. Brickler, 683 N.E.2d 358, 114 Ohio App.3d 401 (Ohio 2nd Dist. 1996) ...................................................................................................................... 24

City of Monroe Emps. Ret. Sys. v. Bridgestone Corp., 399 F. 3d 651 (6th Cir. 2005) ................. 14

Cleveland v. Shaker Hts., 30 Ohio St.3d 49, 507 N.E.2d 323 (1987) ............................ 28

Dudek v. Thomas & Thomas Attorneys & Counselors at Law, L.L.C., 702 F.Supp.2d 826 (N.D. Ohio 2010) ...................................................................................................................... 25

Fed. Home Loan Mtge. Corp. v. Schwartzwald, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214 ...................................................................................................................... 28

Hall v. Callahan, 727 F.3d 450 (6th Cir. 2013)................................................................ 20

Harvey v. Great Seneca Fin. Corp., 453 F.3d 324 (6th Cir.2006)................................... 18

Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921 (6th Cir. 1999);.............. 3

Jacobs v. Wilkinson, 1998 WL 393789, 156 F.3d 1230 (6th Cir.1998) .......................... 3

Kelly v. Montgomery Lynch & Assocs., Inc., N.D. Ohio No. 1:07–CV–919, 2008 WL 1775251, (Apr. 15, 2008), ...................................................................................................................... 25

Kelly v. Whiting, 17 Ohio St.3d 91, 477 N.E.2d 1123, 17 OBR 213 (Ohio 1985) ........... 28

Kort v. Diversified Collection Serv., 394 F.3d 530 (7th Cir. 2005) ................................. 22

Lansing Dairy. Inc. v. Espy, 39 F.3d 1339 (6th Cir. 1994). ............................................... 2

McCrobie v. Palisades Acquisition XVI, L.L.C., 359 F. Supp. 3d 239 (W.D.N.Y. 2019). ................. 20

Miller v. Javitch, Block & Rathbone, 561 F.3d 588 (6th Cir.2009)................................. 18

Phillips v. Asset Acceptance, L.L.C., 736 F.3d 1076 (7th Cir.2013) ............................... 25

RLR Invs., LLC v. City of Pigeon Forge, 4 F.4th 380 (6th Cir. 2021)............................... 20

Russo v. City of Cincinnati, 953 F.2d 1036 (6th Cir. 1992 ............................................... 3

Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007) ........................................................ 29

Schendzielos v. Borenstein, 2016 WL 614473 (D. Colo. Feb. 16, 2016) ...................................... 18

Shoemaker v. Gindlesberger, 118 Ohio St.3d 226, 887 N.E.2d 1167, 2008 Ohio 2012 (Ohio 2008) ...................................................................................................................................................... 26

Simon v. Zipperstein, 32 Ohio St.3d 74, 512 N.E.2d 636 ........................................................... 26

Skinner v. Mountain Lion Acquisitions, Inc., 2014 WL 3853424 (N.D. Cal. Aug. 1, 2014) ........... 19

Sprouse v. Eisenman, 10th Dist. No. 04AP-416, 2005-Ohio- 463 ................................................ 27

State v. Conyers, 87 Ohio St.3d 246, 1999-Ohio-43 .................................................................... 24

Suesz v. Med 1 Solutions, L.L.C., 757 F.3d 636 (7th Cir.2014). ................................................... 25

Taylor v. First Resolution Invest. Corp., 148 Ohio St.3d 627, 2016-Ohio-3444 ..................... 25, 26

Tourgeman v. Collins Fin. Servs., Inc., 755 F.3d 1109 (9th Cir. 2014) ......................................... 19

Tymcio v. State (1977), 52 Ohio App.2d 298, 369 N.E.2d 1063 [6 O.O.3d 310] ......................... 28

U.S. Structures, Inc. v. J.P. Structures, Inc., 130 F.3d 1185 (6th Cir. 1997). ................................. 4

Voll v. Steele (1943), 141 Ohio St. 293, 47 N.E.2d 991 [25 O.O. 424] ........................................ 28

Vollrath v. Georgia-Pacific Corp., 899 F.2d 533 (6th Cir.), cert. denied, 498 U.S. 940 (1990) ....... 3

Wallace v. Washington Mut. Bank, 683 F.3d 323 (6th Cir. 2012) ......................................... 18, 20

Whitaker v. M.T. Automotive, Inc., 111 Ohio St. 3d 177, 855 N.E.2d 825 (2006) ....................... 25

Wilson v. Neu (1984), 12 Ohio St.3d 102, 465 N.E.2d 854 ........................................................ 28

## STATUTES

15 U.S.C. § 1692e ...................................................................................................................... 25

15 U.S.C. § 1692f ....................................................................................................................... 25

15 U.S.C. § 1692k ...................................................................................................................... 21

O.R.C. § 1.51 ............................................................................................................................. 24

O.R.C. § 1109.69 ................................................................................................................. 23, 24

O.R.C. § 1345 ............................................................................................................................ 26

O.R.C. § 2307.60 ....................................................................................................................... 28

O.R.C. § 2921.03 ....................................................................................................................... 28

## RULES

Fed. R. Evid. 201 ....................................................................................................................... 14

Fed. R. Civ. P. 56 ...................................................................................................................... 2, 3

## OTHER AUTHORITIES

Black's Law Dictionary) (7th ed. 1999) ....................................................................................... 22

https://www.merriam-webster.com/dictionary/typographical%20error. ..................................... 8

# I.    Statement of Issues

When a party intentionally sets in motion a chain of events that results in a wrongful act, may the party nonetheless claim that it acted unintentionally?    May the false identification of an affiant's authority to execute an affidavit tend to mislead or confuse a consumer?    May such a false identification support claims under the FDCPA and OCSPA? May the filing of a time-barred collection lawsuit support claims under the FDCPA and OCSPA? Is a person liable for damages in a civil lawsuit based on a criminal act?

# II.   Summary of the Argument

Defendants, the attorney and law firm in a state court debt collection action against Mr. Ray, do not dispute that they created a false affidavit and then attached it to complaint they filed in state court in an attempt to collect a debt allegedly owed by Mr. Ray.    The affidavit falsely identified the affiant as acting for a bank that was alleged to be the originating creditor. The affidavit also falsely identified the alleged debt and defendants' client's standing to sue. In addition to the false affidavit, defendants attached unauthenticated documents purporting to show a connection between the alleged debt and Mr. Ray, and purporting to show their client's right to collect.

Upon being challenged on their state court collection complaint, defendants simply abandoned the attempt to collect $30,198.93.    Defendants failed to defend against Mr. Ray's Rule 12(B)6) Motion to Dismiss.    The complaint filed by defendants was dismissed with prejudice by the state court.

Now, defendants have filed this motion repeatedly asserting that Mr. Ray's liability and their client's right to collect are undisputed.    They are in effect asking this court to reverse the

judgment of the state court.    They support their motion with an affidavit of defendant Ms.

Ogle.    The Ogle affidavit spouts conclusory assertions about Mr. Ray's liability and their

client's rights – all without a shred of supporting evidence or even an indication of the source

for the information.

The principal basis for defendants' motion is their assertion that their conduct was not

intentional.    They assert that this negates state law claims and provides the basis for a defense

to the FDCPA claim.    Contrary to their assertion, Ms. Ogle admitted at her deposition that the

critical event in the creation of the false affidavit was an entry into defendants' systems that

incorrectly identified the plaintiff.    Ms. Ogle admitted that this entry was intentionally made

by an employee of the firm.    This admitted fact defeats most of defendants' arguments in the

current motion.    Defendants further allege that their incomplete efforts to correct the

intentional falsehood should excuse their wrongdoing.    This argument, even if true, is not

sufficient to negate defendants' liability.    It also raises serious issues of credibility which are

unsuitable for adjudication at this summary judgment stage.

## III. Standard of Review

Summary judgment should be granted only if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law.    See

Fed.R.Civ.P. 56(a).    The burden is on the moving party to conclusively show no genuine issue

of material fact exists.    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v.

Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).    A fact is material only if its resolution will affect the

outcome of the lawsuit.    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).    "The

ultimate question is 'whether the evidence presents a sufficient disagreement to require

2

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"    *Back v. Nestle USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251-52).

"[I]n a motion for summary judgment, 'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.    The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'"    *Russo v. City of Cincinnati*, 953 F.2d 1036, 1041-42 (6th Cir. 1992) (quoting *Anderson* at 255, and citing *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir.), cert. denied, 498 U.S. 940 (1990)).    See also, *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005).

F.R.C.P. 56(c)(1)(A) permits the use of affidavits to support a fact asserted in a motion for summary judgment.    However, such an affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.    F.R.C.P. 56(c)(4).    These requirements of "personal knowledge and competence," in the affidavit may however "be inferred from its contents."    *Jacobs v. Wilkinson*, 1998 WL 393789, at *1, 156 F.3d 1230 (6th Cir.1998), citing *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir.1990)).

Under F.R.C.P. 56(c)(2), an opposing party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. "'Hearsay evidence may not be considered on summary judgment." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999); see also, *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007), *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d

1185, 1189 (6th Cir. 1997).    "The proffered evidence need not be in admissible form, but its content must be admissible."    *Bailey v. Floyd County Board of Education*, 106 F.3d 135, 145 (6th Cir. 1997).

## IV.  Relevant Facts

On June 11, 2021, Ms. Ogle and her law firm Atkins & Ogle Law Offices, LC ("AOLO") filed a case against Mr. Ray in the Court of Common Pleas, Cuyahoga County, as Case No. CV-21-948648 ("Collection Case").    A copy of the complaint filed by defendants ("Collection Complaint") was attached to the Complaint filed in this case as Exhibit 1 (Doc. 1-1, PageID #s 25-45).    Defendants admit this fact in their Answer. (Doc. 4, ¶10).    The Plaintiff in the Collection Case was identified as UHG 1, LLC, Assignee of Marlette Servicing, LLC, as Servicer of Cross River Bank. *Id.*

No admissible evidence connects Mr. Ray to the account alleged in the Collection Complaint.    No admissible evidence connects the plaintiff alleged in the Collection Complaint to the account alleged therein.    Yet, defendants repeatedly allege in their motion that these facts are undisputed.    For this, they rely solely on the hearsay assertions in the affidavit of Ms. Ogle (motion Exhibit 2).    That affidavit of Ms. Ogle demonstrates no basis for an assertion of personal knowledge of these facts.

In response to the Collection Complaint, Mr. Ray filed a motion to dismiss for failure to state a claim.    *Ogle*, 162 and Exhibit 8.[1]    This motion was granted, and the Collection Case was dismissed <u>with prejudice</u> on October 28, 2021.    *Ogle*, 163 and Exhibit 9.    Defendants admit this fact in their Answer. (Doc. 4, ¶23).    Thus, this dismissal with prejudice is an

---

[1]  Ms. Ogle deposition transcript is filed in this case as Doc. 12.

unassailable determination by the state court that Mr. Ray owes nothing to UHG I, LLC. Defendants simply ignore this fact while baldly asserting that Mr. Ray's liability to UHG I, LLC. is undisputed.

Defendants failed to even file a response to Mr. Ray's motion to dismiss, despite given the opportunity to do so at a hearing.   (*Ogle* 163:14 – 164:6).   Defendants also failed to appeal the dismissal with prejudice.   When challenged, defendants simply abandoned a $30,198.93 claim.   These failures may be evidence from which a trier of fact may conclude that defendants knew that assertions made in the Collection Complaint lacked merit when those assertions were made.   This is evidence of intentional conduct.

## A.   Affidavit of Bree Ogle ("Ogle Affidavit," motion exhibit 2)

The affidavit starts with the assertion that Ms. Ogle has "knowledge of the facts contained herein," however the affidavit states no basis for this claim of knowledge.

Mr. Ray does not dispute that Ms. Ogle is a lawyer, that she is employed by AOLO, and that she signed the Collection Complaint.   Based on these undisputed facts, personal knowledge may be imputed for assertions in the affidavit that relate to the processes employed within the firm as they relate to actions taken in connection with the Collection Case, including Ms. Ogle's own actions.   Much in these assertions however is inadmissible hearsay.

There is however no basis to impute personal knowledge of the assertions in the affidavit that relate to Mr. Ray's connection to the account alleged in the Collection Complaint, creation of the account, relationship between the alleged original creditor and the named plaintiff (UHG I) in the Collection Complaint, and employment status of persons not connected with the law firm.   Of course, with no actual evidence to support them, these assertions are

also inadmissible hearsay.

Pursuant to F.R.C.P. 56(c)(2), Mr. Ray objects to the Ogle affidavit paragraphs 3, 4, 5, 7, 10, 11, 12, 13, 15, 16, 17 on the grounds that the statements are not made on personal knowledge; the statements do not set out facts that would be admissible in evidence; and the affidavit does not show that the affiant is competent to testify on the matters stated.    Those statements in the affidavit are hearsay.    As to the remaining paragraphs of the Ogle Affidavit, paragraphs 10, 11, 12, and 14, those statements are contradicted by other admissible evidence and the conflict demonstrates that there is a dispute as to the material facts stated therein.

The paragraphs that state what Ms. Ogle personally did, while at times vague and self-serving, can be assumed to be based on personal knowledge, such as in paragraphs 1, 2, 6, 8, 9, 13, and 17.    However, the statements in paragraphs 3, 4, 5, 7, 10, 11, 12, 15, and 16 are hearsay in that they are not based on personal knowledge and are offered to prove the truth of the matter asserted.    Evid.R.801(c).    The affidavit does not even attempt to establish any exception to the hearsay rule under which the challenged statements could be admissible.    As hearsay, the statements of fact in those paragraphs are not admissible, for example:

- "I filed an action … seeking to collect a debt owned by my client, UHG I." (¶3, emphasis added).    "UHG I had purchased the debt at issue from Cross River Bank." (¶4).    Ms. Ogle does not allege that she was personally involved in the creation, maintenance, or sale of the alleged account. This leaves no basis for inferring personal knowledge.    If the knowledge was gained through review of documents, then she is simply repeating the contents of such unidentified documents to prove the truth of these assertions. The assertion fails as inadmissible hearsay.    There is also no basis on which this court

6

may assess the reliability and trustworthiness of the information.    Moreover, the

Collection Complaint contradicts these assertions by identifying the plaintiff as: "UHG I

LLC, assignee of Marlette Servicing LLC, as servicer of Cross River Bank."    Ms. Ogle also

admitted that "the assignor in that case is Marlette Servicing, LLC." (*Ogle* 94:25 – 95:3).

The further assertion of "as servicer of Cross River Bank," does not change the identity

of assignor in the chain of title, nor does it offer any admissible evidence that this

assignor was transferring rights of some other entity, or that it had the right to do so.

- "Cross River Bank, a lender which provides finding through Best Egg, an online lending

  platform."    Fails for lack of personal knowledge and inadmissible hearsay.

- AOLO "utilizes several levels of automation and review to ensure its filings are accurate

  and compliant with the FDCPA and other laws." (¶5).    "CollectMax system was put in

  place to reduce errors and ensure uniformity and correctness in the Firm's filings." (¶7).

  These conclusory assertions are unsupported by any evidence that shows what the

  automations systems are designed for, and whether (and how) the systems achieve the

  alleged accuracy, correctness, uniformity, and compliance with laws.

- "The affidavit prepared by CollectMax for the debt collection action <u>properly identified</u>

  <u>UHG I as the current account holder</u>, and <u>Cross River Bank as the original creditor</u>."

  (¶10, emphasis added).    The reference to the "affidavit" is to "Affidavit of Claim"

  signed by Kaelyn Kowalik, and attached to the Collection Complaint as Exhibit A

  (hereafter "Kowalik Affidavit").    The underlined phrases cannot support defendants'

  motion for summary judgment because they are not based on personal knowledge and

  are inadmissible hearsay.

- "All of the factual statements in the affidavit were true and accurate, including the fact that Ms. Kowalik serves as a bookkeeper for the plaintiff UHG 1."   (¶11).    The falsity of the "factual statements" is discussed below in Section IV (E).    There is no basis for Ms. Ogle's personal knowledge as to Ms. Kowalik's employment status or title, thus this assertion fails for lack of personal knowledge and inadmissible hearsay.    Moreover, Ms. Kowalik has contradicted these assertions about her employment responsibilities. See, Section IV (E) below, and *Kowalik*[2]  18:1-5.

- "The signature block of the affidavit for Ms. Kowalik, however, contained a typographical error." (¶12).    The same suggestion of "typographical error" is also repeated in ¶13.    Webster defines typographical error as a mistake, such as a misspelled word in typed or printed text; https://www.merriam-webster.com/dictionary/typographical%20error.    The error alleged by defendants does not fit this definition, and the assertion is contradicted by Ms. Ogle's deposition testimony, where she testified that the name of the entity in the signature block was placed there as a result of an intentional change defendant made in the spreadsheet system.    Ogle Affidavit at ¶6.    Moreover, this assertion of "typographical error" falsely suggests that this error was unique or isolated.    Section IV (D) below

---

[2]  The deposition of Kaelyn Kowalik was taken in the case of *UHG I LLC v Miller* - Fayette County, Ohio, Court of Common Pleas - Case CVH 20220397.    That case also involves a false affidavit signed by Ms. Kowalik on behalf of an entity with which she has no connection.    At the deposition, Ms. Kowalik was questioned about the affidavit used against Mr. Ray, and she testified that the process she undertakes to sign affidavits was the same for Mr. Ray's case as in the *Miller* case.    Kowalik, 71:5 – 72:14; Exhibit 6.    Ms. Kowalik's deposition transcript is filed in this case as Doc. 14.

demonstrates that this same alleged "error" has been repeated numerous times over more than a year, in multiple courts throughout the state of Ohio.

- "In 2017, when Melvin Ray breached his contract with Cross River Bank."   (¶15). There is no admissible evidence of a contract between Mr. Ray and Cross River Bank, nor of any breach of such an unproven contract.    Thus, this assertion fails for lack of personal knowledge and is inadmissible hearsay.    Moreover, Mr. Ray denied any relationship with Cross River Bank.    *Ray*, 19:4 – 20:8.[3]

- "Ohio statute of limitations was eight years."   (¶15).   This assertion implies a written contract so as to implicate ORC § 2305.06.    There is no such contract in evidence as discussed above.    Moreover, as discussed in Section V (C) below, Ms. Ogle is also incorrect in her legal conclusion.

- "At the time the debt collection action was filed, the debt <u>owed by</u> Melvin Ray was <u>owned by</u> UHG 1, as indicated in Exhibit D attached to the collection complaint against Mr. Ray."   (¶16, emphasis added).    As to the "owed by" and "owned by" assertions, the above discussion establishes the lack of basis for personal knowledge and the inadmissible hearsay nature of these assertions.

  The allusion to "Exhibit D attached to the collection complaint," as an evidentiary basis to support the assertions is also false.    This Exhibit D is an unauthenticated document, which consists of three sheets (based on the handwritten notation "D" at the top of each page).    There is no evidence that the last two sheets have anything to do with the

---

[3]  Mr. Ray's deposition transcript is filed in this case as Doc. 13.

9

first sheet.    The only reasons to speculate that the last two sheets have anything to do with each other is that they seem to have the same format.

The first sheet has the title "BILL OF SALE," which demonstrates no connection to the debt alleged against Mr. Ray.    The document purports to relate to a sale between Marlette Servicing (a "Servicer") and UHG I of Marlette's rights in a list of accounts, which list is not attached to Exhibit D.

Nothing in this Exhibit D establishes that UHG I has the legal and equitable rights in the account alleged against Mr. Ray, so as to have standing to sue under Ohio law.

**B.  Other Assertions in defendants' "Statement of Facts" are unsupported.**

Defendants' have made numerous assertions in the Statement of Facts section of their brief with citations to Mr. Ray's deposition.    The suggestion is that somehow Mr. Ray authenticated these assertions.    This is false.    The statements challenged, and the evidence to support the challenges, are set forth below:

- "In July 2015, Plaintiff Melvin Ray sought and received a $30,000 loan from Best Egg, an online lending platform." Br. at 3, citing to *Ray*, 19:17-21.      Mr. Ray did acknowledge that he had obtained a loan from Best Egg, but he did not testify that Best Egg was "an online lending platform."    The citation to Mr. Ray's testimony is also misleading because defendant's counsel conducted the examination using a document marked as deposition Exhibit A ("Loan Agreement") suggesting to Mr. Ray that it was a document from his own records. *Ray*, 20:24 – 23:4.    This was false, because the document was one that was provided to Mr. Ray's counsel by Ms. Ogle during the Collection Case, which fact would have been obvious if the preceding document (a cover letter from Ms.

Ogle) had been attached to Exhibit A.    Mr. Ray produced these documents as his initial disclosures marked Ray 33 (Ms. Ogle's cover letter) and Ray 34-43 as attachments to that letter.    Mr. Ray denied having ever seen this document other than in preparation for the deposition. *Ray*, 22:23 – 23:13.

- "In 2020, Cross River Bank sold Plaintiff's loan to UHG I."    Br. at 3, citing *Ray* Depo at p. 97 and Deposition Exh. J.    There is nothing at *Ray* p. 97 relating to any sale from Cross River Bank to UHG I, and Exh. J is simply the Collection Complaint filed against Mr. Ray.

- "Plaintiff was notified of this sale via correspondence from Best Egg."    Br. at 3, citing *Ray* Depo at p. 46 and Deposition Exh. D. See discussion at p. 45 of Ray Deposition where counsel agree that the exhibits being presented to Mr. Ray originated from correspondence from Bree Ogle to Mr. Ray's counsel Susan Gray. *Ray* Depo p. 45. Deposition Exh. D purports to be a letter regarding a sale to UHG I, and was another document sent to Mr. Ray's counsel by Ms. Ogle during the Collection Case.    Mr. Ray denied ever seeing that document, and he testified that he had never been informed of any sale to UHG I.    *Ray*, 46:20 – 47:13.

## C.    Alleged Typographical Error in the Kowalik Affidavit was Intentional.

The Ogle Affidavit, as discussed above, alleges that identification of "Cross River Bank" in the signature block of the Kowalik Affidavit was a "typographical error."    Defendants' brief embellishes this assertion: "**Upon investigation**, Defendants determined that the typographical error in the signature block was **likely caused** by a former employee, Shyenna Wheeler, who **apparently noticed** that Cross River Bank had been **erroneously labeled** as the current account holder/plaintiff. (Ex. 3, Ogle Depo. at pp. 74-77)."    Br. at 5, emphasis added.

11

The use of vague terms like "apparently" and "likely" is defendants' apparent attempt to obfuscate the fact that "Cross River Bank" was <u>intentionally</u> entered into AOLO's systems "as the current account holder/plaintiff" – not "erroneously labeled" as claimed in the brief.    This fact was admitted by Ms. Ogle at her deposition:

> Q.  So somebody made an actual decision --
> A.  Yes.
> Q.  -- that the plaintiff name needed to be changed for particular accounts, correct?
> A.  Yes.
> Q.  Who made that decision?
> A.  We are not sure.
> Q.  Have you taken -- investigated?
> A.  Yes.
> Q.  And when did you investigate?
> A.  We have been investigating it from, I guess, when we were made aware of what happened.
> Q.  Okay. Who conducted the investigation?
> A.  I did, and then Austin Campbell who handles the spreadsheets.
> Q.  Were you able to identify -- since you're part of that investigation, were you able to identify who accessed this particular spreadsheet?
> A.  Well, Austin created it at the direction, but we don't know who the direction was from.
> Q.  I see. So somebody gave the direction to Austin that -- create a spreadsheet that will change the plaintiffs' names?
> A.  Yes.
> …
> Q.  And Austin has no notes about who instructed him to do this?
> A.  Correct.
> Q.  And does he have any recollection about why?
> A.  He remembers that another employee, Shyenna Wheeler, who is no longer there, told him it needed done, but he does not know if she was told by UHG or where that information came from or why she told him that. But she was the one that created this affidavit.
> Q.  So did you investigate whether there was a communication from UHG to Ms. Wheeler about any changes?
> A.  We tried, but we could not find any. So it could have been a call. We don't know.

*Ogle* 41:20 - 43:24.

So, according to Ms. Ogle, Ms. Wheeler (one employee of AOLO) instructed Mr. Campbell (another employee of AOLO) to enter "Cross River Bank" into the data field that identifies the plaintiff.    Then this data field purportedly populated the mail merge fields to identify the plaintiff in two places on the Kowalik Affidavit.    According to Ms. Ogle, Ms. Wheeler, despite knowing that the same name appeared in two places on the affidavit, then changed the name only in one location.    *Ogle*, 76:21 – 79:14.

Contrary to defendants' argument, the "error" they committed was the change made in their systems to identify the plaintiff as Cross River Bank.    The fact that the change was intentionally made is admitted by Ms. Ogle.    Notably, while Ms. Ogle testified as to an investigation to determine why this change was made, defendants have refused to produce any documents related to the investigation.    See, Mr. Ray's R. 56(d) motion (Doc. 16).    Claiming lack of knowledge as to the reasons for this intentional falsification of the identity of the plaintiff and concealing the results of their investigation, defendants are asking this court to weight the evidence in their favor to conclude that their alleged error was unintentional.

Ignoring their intentional conduct, defendants ask this court to focus on the later consequences of this conduct, i.e., the failure to correct the Kowalik Affidavit.    However, there would be no need to correct the affidavit if defendants had not first engaged in the wrongful intentional conduct.

## D.   Falsification of the Kowalik Affidavit is not an isolated event.

The Ogle Affidavit and defendants' motion attempt to create the impression that the alleged error in the affidavit used against Mr. Ray in the Collection Complaint was an isolated event.    Defendants' also prevented Ms. Ogle from fully testifying at her deposition about the

extent of these claimed errors, objecting that such inquiry was class discovery.    *Ogle* 37:19-25,

38:1-25, 39:1-4.    See also, Mr. Ray's R. 56(d) motion (Doc. 16).

In the face of defendants' refusal to produce this evidence despite Fed. R. of Evid.

404(b)(2), Mr. Ray has independently gathered evidence demonstrating that the same

falsification of affidavits has been made in several other cases both in support of Complaints

and to seek default judgments.    Attached as Exhibits 1 to 4 are certified copies of such false

affidavits filed by defendants in other Ohio collection cases, including the use of a false affidavit

multiple times in some cases.    Ex. 2, pp. 5, 23; Ex. 4 pp. 4, 20, 39.    Exhibit 5 is a table of cases

where defendants have committed the same wrongful acts, including uncertified copies of key

documents. The court may take judicial notice of these cases, filed over a period from October

1, 2020 through January 10, 2022. *Id*.    Fed. R. Evid. 201 permits a court to take judicial notice

of facts that are not subject to reasonable dispute, including facts that can be accurately and

readily determined from sources whose accuracy cannot be questioned. *See City of Monroe*

*Emps. Ret. Sys. v. Bridgestone Corp.,* 399 F. 3d 651, 655 n. 1 (6th Cir. 2005)(taking judicial notice

of information that meets the requirements of Rule 201 from an internet website); see also

*Boyd v. Georgia*, 512 F. App'x 915, 917 (11th Cir. 2013)(District Court did not abuse its discretion

in taking judicial notice of online state court docket).

Ms. Ogle did admit that AOLO had intentionally changed the name of the plaintiff, as in

Mr. Ray's case, for "certain accounts that came over a certain time."    *Ogle*, 39:12-13.    In

addition, Ms. Kowalik, the affiant in the Collection Case, admitted to signing other false

affidavits which defendants sent to her to sign for banks for which she had on authority to sign.

*Kowalik,* 43:18-32, 72:9-14, 77:21-23, 78:1-11.

### E.   The false representation as to affiliation with Cross River Bank is only one of multiple false representations in the Kowalik Affidavit.

As discussed in Section IV(A) above, there is no admissible evidence that Cross River Bank is the original creditor, nor that UHG I, LLC acquired an interest in the account alleged against Mr. Ray.    *Kowalik*, 79:17-23, 80:1-12.    In addition, paragraph 3 of the Kowalik affidavit falsely states that Ms. Kowalik serves as "keeper of the books and records of plaintiff." Ms. Kowalik has testified that she has no knowledge of how records received from sellers of accounts are integrated into her employer's (UHG I) business records.    *Kowalik,* 18:10-19, 40:8-20.    She further testified that she is not responsible for gathering or transmitting business records for collection activity to collection firms. *Kowalik,* 24:5-21.    She also testified that she does not look at imaged documents maintained by her employer.    The only such documents she reviews are those that are supplied by collection firms as attachments to affidavits prepared by such firms and provided to her for signature.    *Kowalik*, 58:3-19.

Paragraph 3 of the Kowalik Affidavit also falsely states that "entries in them [her employer's business records] having been made at or near the time of the occurrence."    This statement is made to support the data contained in the affidavit as to the identity of the "Original Creditor," "Debtor," and the "Original Account Number," as well as the "amount justly due on account."    None of these data elements are created by Ms. Kowalik's employer, but by virtue of the accounts being (allegedly) purchased – these data elements are necessarily created by the creditor who originated the account.    Thus, the suggestion that Ms. Kowalik has any personal knowledge of the creation of this data "at or near the time of the occurrence" is patently false.    As demonstrated in the above excerpts of her deposition testimony, Ms. Kowalik readily admitted that she has no knowledge of how or when the data she reviews (for

purpose of signing affidavits) came to reside in her employer's systems and she does not review or question its accuracy. *Kowalik*, 20:6-23, 40:6-23, 41:1-13.

Paragraph 5 of the Kowalik Affidavit also states that "Debtor is responsible for payment of attorney fees and collection costs pursuant to the account terms … ." Yet, as noted above, Ms. Kowalik never reviews any documents belonging to her employer that could qualify as "account terms."    Thus, there can be no basis for this assertion of liability of the debtor for attorney fees.

Finally, contrary to the notary acknowledgment on the affidavit, Ms. Kowalik testified that she does not in fact sign the affidavits in the presence of the notary:

> Q. And then you sign them at your desktop, or do you sign them in front of her [Ms. Salois, Notary Public]?
> A. I will sign them at my desktop.
> Q. And then you take them over to her?
> A. Mhmm.
> Q. For her part, for her to do her part?
> A. Yes.

*Kowalik*, 56:6 - 12.

**F.    Defendants' assertion that Mr. Ray "admitted that he has no evidence" of intentional misrepresentation is misleading.**

Defendants assert that "Plaintiff admitted that he has no evidence that any misrepresentations allegedly made by Defendants were intentionally or knowingly made."    Br. at 5, citing Ray Depo. at pp. 134-35.    Defendants repeat the same assertion throughout their brief.    Defendants however fail to clarify that the questions asked of Mr. Ray were specifically limited to Mr. Ray "personally" and explicitly <u>excluded</u> information that "his counsel may have discovered."    *Ray*, 132:19 – 133:15.    These out-of-context excerpts about Mr. Ray's personal knowledge as to the state of discovery are misleading and have no probative value.

16

It is incomprehensible why a consumer would be required to (himself) undertake discovery when he has hired counsel to represent him.    It is also absurd that counsel for a party would use the deposition of a lay party witness to inquire about the opposing counsel's work product created during the pending litigation.    Whether or not Mr. Ray personally knew the information in his counsel's possession (as to defendants' intent) has no bearing on defendants' culpability.    As discussed in section IV (C) above, the intentional nature of defendants' wrongful conduct is established through Ms. Ogle's own testimony.

## V.  Argument

### A.   Filing a false affidavit may be a violation of the FDCPA.

Defendants argue "that all the factual statements made in the affidavit were true and correct," that only the "signature block" was incorrect. Br. at 7.    Section IV (E), supra, demonstrates that the Kowalik Affidavit is false is other respects (in addition to the signature block), and that there is no admissible evidence to connect Mr. Ray or UHG I to the account alleged in the Collection Complaint.    Section IV (A) demonstrates further that assertions in the Ogle Affidavit fail for lack of personal knowledge and as inadmissible hearsay.

In the signature block of her affidavit, Ms. Kowalik signed for Cross River Bank as its Account Administrator:

**Cross River Bank**

By: _____

Name:  Kaelyn Kowalik

Title: _____ Account Administrator

Admitting that the signature block is false, defendants argue that the falsehood is not "materially false" and therefore not a violation of the FDCPA.    Br. at 6-7.

The FDCPA provides that "[a] debt collector may not use any false, deceptive, or

misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.    The Sixth Circuit requires that, for the deception to be actionable, it must be material to the least sophisticated consumer.    *Wallace v. Washington Mut. Bank*, 683 F.3d 323, 326 (6th Cir. 2012), citing *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir.2006) and *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596–97 (6th Cir.2009).    "The materiality standard simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." Id. at 327.

In considering materiality, "[i]t is important to remember the context in which the representation was made. A court proceeding is a very confusing and intimidating process for most individuals and certainly for the least sophisticated debtor."    *Schendzielos v. Borenstein*, 2016 WL 614473 (D. Colo. Feb. 16, 2016). Moreover, "court proceedings are intimidating to the average individual. The inclusion of confusing or incomplete language in a court filing like the Motion could make the least sophisticated consumer feel even further out of his league and convince him to concede his case rather than to pursue other litigation strategies."    Id.

Here, the Kowalik Affidavit sought to validate essential aspects of the claim made in the Collection Complaint, including the amount and existence of the claim as well as the real party in interest.    An affidavit set up to appear to be made by the bank, identified as the originating creditor, would reasonably carry more weight than an affidavit made by a debt collector, and this could therefore dissuade a consumer from defending the lawsuit.    It is also reasonable for a lay person to put more faith in documents created by a bank than in those created by unknown and unregulated debt collectors.    Since many collection lawsuits result in default judgments, such a bank affidavit may also mislead a court.

18

For all these reasons, a trier of fact may reasonably conclude that upon seeing a bank affidavit verifying the claim and the person with the right to collect, a least sophisticated consumer's ability to decide how to respond to the lawsuit may be influenced and impeded. Thus, the fact that the Kowalik Affidavit falsely represents the capacity of the affiant is material because it tends to confuse or mislead.    A debt buyer's false representation that an affidavit was from the originating creditor has been found to support an FDCPA claim.    *Skinner v. Mountain Lion Acquisitions, Inc.*, 2014 WL 3853424 (N.D. Cal. Aug. 1, 2014).

Defendants additionally argue that everything else in the affidavit is true ("did not negate the truthfulness or correctness of the affidavit"), thus even if a consumer is misled the falsehood would be inconsequential.    This is not the standard for materiality, and the premise is factually defective because as demonstrated above, the affidavit is false or unsupported in many key respects.

Despite the dismissal with prejudice of the claims asserted in the Collection Case, defendants repeatedly assert that facts about the alleged debt and UHG I's right to collect are undisputed.    They offer no actual evidence for this assertion other than the inadmissible assertions in the Ogle Affidavit.    Moreover, Mr. Ray's obligation, on the debt alleged in the Collection Case, is not an issue in this case.    Defendants' attempt to make this an issue in this case also fails because they have offered no admissible evidence of Mr. Ray's connection to the debt or of UHG I's right to collect.    Mr. Ray has also denied any connection to the Cross River Bank account.    *Ray*, 19:4 – 20:8.

Identity of the original creditor is "a critical piece of information."    *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1121 (9th Cir. 2014).    Misrepresenting the original

creditor can unduly complicate a consumer's efforts to investigate the nature of the debt or know how to respond to the collection effort. Id.    The Sixth Circuit has held that misrepresentation of who owns the debt at the time of collection is material, because this affects the consumer's efforts to contact the owner.    *Wallace*, 683 F.3d at 327; see also *McCrobie v. Palisades Acquisition XVI, L.L.C.*, 359 F. Supp. 3d 239 (W.D.N.Y. 2019).

Here, defendants admit they created the Kowalik Affidavit.    They also admit creating the false statement that Ms. Kowalik was signing the affidavit for Cross River Bank.    Ms. Kowalik has denied being the "keeper of books and records" for UHG I, negating the basis for personal knowledge asserted in the affidavit.    The state court's dismissal with prejudice of the Collection Case creates (at least) a presumption that the assertions in the affidavit of Mr. Ray's liability and UHG I's standing are false.    Moreover, having lost in state court, defendants appear now to be (impermissibly) asking this court to review and reject the final judgment of the state court.    "Federal district courts do not stand as appellate courts for decisions of state courts."    *RLR Invs., LLC v. City of Pigeon Forge*, 4 F.4th 380, 387 (6th Cir. 2021), quoting *Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013).

Each false statement in the Kowalik Affidavit tends to mislead or confuse a consumer and hinder his ability to respond to a collection lawsuit, and each is therefore a material misrepresentation.

**B.  Defendants' conduct was intentional and they are not entitled to the Bona Fide Error defense.**

As discussed in Section IV (C) above, defendants have admitted that they intentionally changed the name of the plaintiff to "Cross River Bank."    They also admit that this change was unwarranted and incorrect.    Defendants have offered no explanation how this wrongful action

could qualify as a bona fide error within the meaning of 15 U.S.C. § 1692k(c).

Ignoring this intentional wrongful conduct, defendants instead focus on the predictable result of this conduct, i.e., the creation of the false affidavit.    They argue that their failure to correct the resulting affidavit was the error, even though this error would not have occurred but for the intentional wrongful conduct.    Mr. Ray respectfully submits that the limited defense provided in 15 U.S.C. § 1692k(c) is not meant to shield debt collectors from predictable results of their intentional conduct.    Simply for illustration, defendants' argument is akin to a debt collector intentionally shooting a gun at the consumer, and then arguing that the error it committed was the failure to put a shield in front of the consumer.

The FDCPA provides an affirmative defense ("BFE") to a narrow band of conduct in 15 U.S.C. §1692k(c).    This section states:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

Thus, the debt collector must establish each separate requirement of the defense— unintentional, bona fide error, maintenance of procedures to avoid such error.

As discussed above, the act that created the false affidavit was the entry of the false name of plaintiff in the "spreadsheet system".    Because this act was intentional, it fails the very first requirement for the defense.

For the sake of argument, Mr. Ray will address defendants' assertion that the failure to correct the false affidavit qualifies for the BFE defense.

First, defendants claim that an employee corrected the error in one place on the affidavit, but failed to do so in the signature block.    They claim this was an unintentional

oversight.    Yet, the same oversight occurred numerous times as demonstrated in Section IV

(D) above.    How many times can one do the same act and still claim that the act is

unintentional? The fact that defendants failed to even acknowledge the repeated conduct in

their motion, and have refused to produce related discovery, is in itself an indication that the

conduct was not unintentional.    These facts raise serious issues of credibility about

defendants' intention, and must be decided by a jury.

Next, an error is bona fide if it is made in a good faith attempt at compliance and is a

genuine as opposed to a contrived mistake.    *Kort v. Diversified Collection Serv*., 394 F.3d 530,

538 (7th Cir. 2005) (quoting Black's Law Dictionary) (7th ed. 1999) (defining "bona fide" as "1.

Made in good faith; without fraud" and "2. Sincere; genuine."

Here, the act that caused the false affidavit to be created was intentional and wrong by

defendants' admission.    Thus, there can be no reasonable argument that the attempt to

correct this wrongful conduct was in good faith.    Again, the numerous instances of the same

conduct negate the defense of good faith, and raise (at a minimum) serious issues of credibility.

Finally, did defendants have a procedure in place to prevent this particular error and

was it used?    Defendants cite to a "three-level review process" as the procedure to support

their claim to a BFE defense.    Again, the fact that three people missed a prominent item on

the affidavit – and did so on numerous affidavits – in complaints filed for more than a year in

multiple courts, raises issues of credibility.    Moreover, a fourth person (the affiant, Ms.

Kowalik) also presumably reviews the affidavit.    The fact that she too overlooks the false

identification of her employer – despite signing immediately below it – raises further credibility

issues.    Defendants are asking this court to impermissibly view this evidence in their favor.

Defendants' intentional changing of the plaintiff's name in their spreadsheet system defeats any claim to a BFE defense.    While defendants point to a procedure they claim is designed to correct an intentional falsification of the affidavit, they do not point to any procedure in place to prevent a false affidavit to be created in the first place.   Thus, while defendants claim they do not know why they changed the name for the plaintiff to an incorrect one, they point to no procedure that would prevent such falsification.   Even the procedure they point to for correction is simply one for general review.   A vague after-the-fact excuse for an action does not establish the existence of procedures to prevent that action.

The further argument about the failure to correct this intentional wrongful conduct, at a minimum, raises credibility issues that should not be decided at this summary judgment stage.

## C.   Defendants filed a time-barred lawsuit.

Defendants assert that the debt alleged in the Collection Complaint was issued by Cross River Bank.    Ogle Affidavit, ¶¶ 3-4.    Ms. Ogle testified that the account was closed on September 30, 2017.    Ogle, 89:3-5.

As a bank, Cross River Bank is subject to O.R.C. § 1109.69. O.R.C. § 1109.69(F) provides:

> Any action by or against a bank based on, or the determination of which would depend on, the contents of records for which a period of retention or preservation is set forth in divisions (A) and (B) of this section shall be brought within the time for which the record must be retained or preserved.

O.R.C. 1109.69(A) provides in relevant part:

> (A)  Every bank shall retain or preserve the following bank records and supporting documents for only the following periods of time:
>
> (1)  For one year:
>
> ...

23

(h)  All records relating to closed consumer credit loans and discounts, after date of closing.

Thus, for any claim based on a consumer credit loan issued by a bank, Ohio provides for a one-year statute of limitations under R.C. 1109.69(F)).    As a claimed assignee of the bank, UHG I wishes to stand in the shoes of the bank that closed the consumer credit account, thus it too is subject to R.C. 1109.69(F) and the same one-year period of limitation.    "The assignee stands in the shoes of the assignor and has no greater rights against the obligor than the assignor had.    See 6 Ohio Jurisprudence 3d (1978) 213, Assignments, Section 46." *Citizens Fed. Bank, F.S.B. v. Brickler*, 683 N.E.2d 358, 114 Ohio App.3d 401, 410 (Ohio 2nd Dist. 1996).

The Collection Complaint was filed on June 11, 2021.    Br. at 4, and Ogle Affidavit, ¶3.  Thus, it was filed almost four years after the account closing date of September 30, 2017, and was time-barred when filed.

The Ohio Supreme Court has held that when "internal bank records are crucial evidence" in a case, then "R.C. 1109.69(F) applies" to the case.    *Abraham v. Natl. City Bank Corp*. (1990), 50 Ohio St.3d 175, 177.    Ms. Ogle testified that the alleged account was a bank loan, distinct from a credit card account, and that bank records were important in order to collect on the alleged loan. *Ogle*, 87:17 – 88:5.    She also agreed that a claim could not validly be made against the debtor without bank records.    *Ogle*, 88:6-10.    Thus, R.C. 1109.69(F) applied to the Collection Case.

Defendants have ignored R.C. 1109.69(F), and have instead incorrectly focused on Ohio's general statute of limitations contained in R.C. 2305.06.    Ogle Affidavit, ¶ 15.    R.C. 2305.06 is inapplicable to the Collection Case because under R.C. 1.51, the "special" provisions of R.C. 1109.69(F) prevail over the "general" provisions of R.C. 2305.06.    *See* also, *Abraham,*

50 Ohio St.3d at 178, reaching the same conclusion in an analogous context; and, more generally *State v. Conyers*, 87 Ohio St.3d 246, 248, 1999-Ohio-43.

The Ohio Supreme Court noted, "[s]tatutes of limitations are designed to protect defendants from stale claims, but for many consumers, they do not," and "described the too-common scenario: '[T]he debt collector hopes that the debtor will be unaware that he has a complete defense to the suit and so will default, which will enable the debt collector to garnish the debtor's wages.'"   *Taylor v. First Resolution Invest. Corp*., 148 Ohio St.3d 627, 2016-Ohio-3444, ¶¶ 34-35, quoting *Suesz v. Med-1 Solutions, L.L.C.*, 757 F.3d 636, 639 (7th Cir.2014).

*Taylor* further held that "the filing of a time-barred collection action may form the basis of a violation under both the FDCPA and the OCSPA."   *Id.*, ¶ 1.   This follows because "[t]he filing of a time-barred lawsuit by a debt collector has been held to constitute a violation of 15 U.S.C. 1692e and 1692f for falsely representing the legal status of a debt and employing an unfair means to attempt to collect a debt."   *Id*., ¶ 35, citing *Phillips v. Asset Acceptance, L.L.C.*, 736 F.3d 1076, 1079 (7th Cir.2013); *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, L.L.C.*, 702 F.Supp.2d 826, 833 (N.D.Ohio 2010).

## D.   Defendants' conduct may violate the OCSPA

"The [O]CSPA is a remedial law and must be construed in favor of the consumer." *Whitaker v. M.T. Automotive, Inc*., 111 Ohio St. 3d 177, 185, 855 N.E.2d 825 (2006).   OCSPA applies to debt collector attorneys like AOLO and Ms. Ogle and to litigation activities, and to debt collection in general.   *Taylor* , ¶¶ 62, 89.

*Taylor* also noted the interrelationship between the FDCPA and OCSPA: "[V]arious violations of the FDCPA constitute a violation of the CSPA. * * * [T]he purpose of both acts is to

prohibit both unfair and deceptive acts and this court holds that any violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice in violation of R.C. § 1345.02 and/or § 1345.03." *Id.* at ¶ 90, quoting *Kelly v. Montgomery Lynch & Assocs., Inc.*, N.D.Ohio No. 1:07–CV–919, 2008 WL 1775251, *11 (Apr. 15, 2008), (PIF 10002653) quoting *Becker v. Montgomery, Lynch*, N.D.Ohio No. Civ.A. 1:02CV 874, 2003 WL 23335929, *2 (Feb. 26, 2003) (PIF 10002153).

Defendants have not disputed applicability of the OCSPA, nor of the many decisions listed at Complaint ¶105, which are available for public inspection under Ohio R.C. § 1345.05(A)(3).    Defendants make two arguments, the first of which is that the OCSPA claims fail because the "affidavit at issue was not materially false, deceptive, abusive, misleading, unfair or unconscionable." As discussed in preceding sections, this argument is incorrect. The same defects that subject defendants to FDCPA liability may also subject them to OCSPA liability as noted in *Taylor* supra.

Defendants' other argument is that their bona fide error defense prevents Mr. Ray from recovering anything other than his actual damages. R.C. 1345.11(A).    The statute does not however prevent defendants from being held liable.    As discussed above, defendants' conduct was intentional and therefore the defense is unavailable to them, moreover their additional arguments require a credibility determination which is inappropriate at this stage.

### E.    Mr. Ray's common law claims are not "legal malpractice claims."

Defendants assert that Mr. Ray's common law claims are just disguised claims for malpractice, subjecting defendants to litigation only from their client.    Their reasoning is flawed because Mr. Ray's claims do not fit the mold that defendants seek to cast them in.

Defendants' immunity argument "' is rooted in the attorney's obligation to direct attention to the needs of the client, not to the needs of a third party not in privity with the client.'"  *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 887 N.E.2d 1167, 2008 Ohio 2012 (Ohio 2008), quoting *Simon v. Zipperstein*, 32 Ohio St.3d at 76, 512 N.E.2d 636.

This principle is inapplicable here because, while acting as attorneys for the plaintiff, these defendants <u>do</u> have an independent obligation to consumers against whom they file collection suits, because of the duties imposed by consumer protection laws discussed above. Defendants do not dispute that the FDCPA and OCSPA apply to them and their litigation activities.  The duties and obligations imposed by the consumer protection statutes do not apply in other contexts where the attorney's sole obligation is to his client.  Additionally, the underlying premise is faulty that the attorney (acting as agent) cannot be held directly liable for his own actions, meaning only the principal (client) can be held vicariously liable.

Defendants acknowledge that their argument fails if they acted with malice.  Br. at 13, citing *Simon*.  They then repeat their arguments that their conduct was not intentional, thus malice cannot be proven.  "Malice has been defined as '[a] condition of mind which prompts a person to do a wrongful act willfully, that is, on purpose, to the injury of another without justification or excuse.'"  *Sprouse v. Eisenman*, 10th Dist. No. 04AP-416, 2005-Ohio- 463, ¶12. As discussed above, the act that created the false affidavit was intentional by defendants' own admission.  Their unwillingness to explain why they took this act does not entitle them to a presumption that the act was not intentional.  The acts of attaching the false affidavit to the Collection Complaint and filing it in court were also intentional.  Ogle Affidavit, ¶3.  For all

the reasons discussed above, there are fact and credibility issues as to defendants' intent in creating the false affidavit.

If defendants are suggesting some sort of privilege because the wrongful action is the filing of the lawsuit, then this argument also fails because the filing was in a court without jurisdiction.    " ' "Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends on whether the party has alleged * * * a 'personal stake in the outcome of the controversy.' " ' "   *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 21, quoting *Cleveland v. Shaker Hts*., 30 Ohio St.3d 49, 51, 507 N.E.2d 323 (1987), quoting *Middletown* at 75, quoting *Sierra Club*, 731–32, quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); (emphasis added.)    Here, the undefended and not appealed dismissal with prejudice of the Collection Case, shortly following the filing of the Collection Complaint, may properly be viewed as a failure to demonstrate a personal stake in the controversy sufficient to invoke jurisdiction of the court in the Collection Case.    "Immun[ity] from civil liability for actions taken in his judicial capacity [is only available] **when jurisdiction is proper**."   *Kelly v. Whiting*, 17 Ohio St.3d 91, 477 N.E.2d 1123, 17 OBR 213 (Ohio 1985), citing *Wilson v. Neu* (1984), 12 Ohio St.3d 102, 465 N.E.2d 854; *Voll v. Steele* (1943), 141 Ohio St. 293, 47 N.E.2d 991 [25 O.O. 424]; *Tymcio v. State* (1977), 52 Ohio App.2d 298, 369 N.E.2d 1063 [6 O.O.3d 310]; emphasis added. There is no reason why these defendants would enjoy immunity for any actions taken in a proceeding where the court lacked jurisdiction.

**F.   Defendants' conduct was intentional and sufficient to support Mr. Ray's fraud and criminal acts claims.**

Defendants' only challenge to claims for fraud for civil liability under O.R.C. §§ 2921.03

and 2307.60, is that "each and every claim revolves around the alleged 'intentional' use of false documents and representations," and that evidence of such intent is missing. Br. at 15.

As discussed in Section IV (C) above, the act of changing the name of the plaintiff (to Cross River Bank) in defendants' spreadsheet system was an intentional act, for which defendants have provided no explanation.    This intentional act caused the false affidavit to be created as admitted by defendants: "[A]ffidavits are prepared via an automated form generation system, CollectMax, which permits names and other information from a spreadsheet to automatically populate the affidavits."    Br. at 4.    In other words, defendants knew that when they falsely changed the name of the plaintiff in the spreadsheet system, this would cause the false affidavit to be created.    Thus, the creation of the false affidavit has been demonstrated to be intentional.    This undisputed fact defeats defendants' sole argument that the element of intention is missing to support the fraud and criminal acts claims.

Defendants' additional argument, that their failure to correct the known and foreseen consequences of their above-described intentional act was innocent, is superfluous because they intentionally set in motion the (known) process for creation of the false affidavit. Moreover, the fact that four individuals (including the affiant) supposedly missed a prominent notation on the affidavit - and did so numerous times – raises genuine issues of credibility for a jury to decide.

Defendants' argument is also incomplete because reckless conduct is tantamount to intentional conduct.    The U.S. Supreme Court has held: "[W]here willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well."    *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007).

## VI. Conclusion

Defendants have not carried their summary judgment burden to point to admissible evidence to show that no genuine issue of material fact exists. Instead, their motion makes bald unsupported assertions that facts are undisputed, points to an affidavit that fails the requirements of personal knowledge and competence and consists almost entirely of inadmissible hearsay. Mr. Ray has pointed to Ms. Ogle's deposition to demonstrate that defendants' conduct was intentional. In the face of discovery obstruction, Mr. Ray has also produced evidence that demonstrates the falsity of the defendants' suggestion that their claimed error was an isolated event. Mr. Ray has demonstrated through this evidence that defendants' assertions of innocent error raise serious credibility issues. For these reasons, Plaintiff requests that this Court deny defendants' motion for summary judgment.

Respectfully submitted,

_____/s/ Susan M. Gray_____
Susan M. Gray (#0062356)
Ohio Savings Bank Building
22255 Center Ridge Rd. Suite 106
Rocky River, OH 44116
(440) 331-3949
smgray@smgraylaw.com

Anand N. Misra (#0067594)
The Misra Law Firm, LLC
3659 Green Road, Suite 100
Beachwood, Ohio 44122
(216) 752 3330
misraan@misralaw.com

Attorneys for Plaintiff Mr. Ray

### Local Rule 7.1(f) Certification

This case has assigned to the Complex track.    Pursuant to Local Rule 7.1(f), I hereby certify that the foregoing memorandum (exclusive of table of contents and table of authorities) meets the thirty (30) page limitation for Complex cases.

> _____/s/ Susan M. Gray_____
> Susan M. Gray (#0062356)
> One of the Attorneys for Plaintiff

### Certificate of Service

I hereby certify that a copy of the foregoing was electronically filed on March 30, 2023, with the Clerk of this Court using the CM/ECF system which will send, by email, notification of such filing to all counsel of record.

> _____/s/ Susan M. Gray_____
> Susan M. Gray (#0062356)
> One of the Attorneys for Plaintiff