UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Melvin Ray,** | ) | **CASE NO. 1:22 CV 1265** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Bree W. Ogle,** *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

**INTRODUCTION**

This matter is before the Court upon Plaintiff's Motion to Deny Defendants' Motion for Summary Judgment or to Defer Consideration Pursuant to F.R.C.P. 56(d)(Doc. 16). Also pending is Defendants' Motion for Summary Judgment (Doc. 11). This case arises under the Fair Debt Collection Practices Act ("FDCPA"). For the reasons that follow, plaintiff's Rule 56(d) motion is DENIED and defendants' motion for summary judgment is GRANTED in PART and DENIED in PART. Defendants are entitled to summary judgment with respect to counts one and two to the extent they are based on credit reporting. Defendants are also entitled to summary

judgment on counts three, four, and five. Defendants' motion is DENIED in all other respects.

**FACTS**

The facts of this case are largely undisputed.

Plaintiff Melvin Ray filed this class action complaint against defendants Bree W. Ogle and Atkins & Ogle Law Offices, LLC ("Atkins & Ogle"), alleging wrongdoing in connection with the collection of a debt. Defendant Ogle is a shareholder of Atkins & Ogle. Defendants primarily handle debt collection matters on behalf of their clients.

In July of 2015, plaintiff obtained a loan in the amount of $30,000 from Best Egg. Best Egg is an online lending platform and offers funding through Cross River Bank. According to defendants, Cross River Bank sold the loan to UHG I in 2020. UHG I is a client of defendants.

At some point, plaintiff fell behind on the loan payments. On June 11, 2021, defendants filed a lawsuit in state court to collect on the debt. In connection with that lawsuit, defendants submitted an affidavit from Kaelyn Kowalik. The affidavit identifies UHG 1 as the current debt holder and further identifies Cross River Bank as the original creditor. Kowalik avers that she (1) is responsible for keeping the books and records of UHG I; (2) reviewed the books and records of UHG I; and (3) determined that Ray owed $30,198. 93. Plaintiff then signed the affidavit, which was notarized. The signature block of the affidavit reads as follows,

FURTHER AFFIANT SAYETH NOT:

| 4/20/21 | Cross River Bank |
|---|---|
| Date | |
| | By: [signature] |
| | Name: Kaelyn Kowalik |
| | Title: Account Administrator |

Plaintiff, *i.e.*, the defendant in the state court action, moved to dismiss the complaint. The motion did not raise an issue regarding the affidavit. The motion was unopposed, and the state court granted it with prejudice.

At some point, plaintiff learned of the inconsistencies in the affidavit and filed this lawsuit. Count one is a claim for violation of the FDCPA. Count two alleges a violation of the Ohio Consumer Sales Practices Act ("OCSPA"). Count three is a claim for "commission of criminal acts." Counts four and five assert claims for fraud and negligence, respectively.

Defendants move for summary judgment on all claims, and plaintiff opposes the motion. Plaintiff also moves pursuant to Rule 56(d) asking that the Court deny or delay a ruling on the summary judgment motion. Defendants oppose this motion. Each will be addressed in turn.

**ANALYSIS**

A.     Rule 56(d) motion

Plaintiff responds to defendants' motion for summary judgment and alternatively moves for discovery pursuant to Rule 56(d). ("Should this Court consider that additional evidence is needed for [plaintiff] to carry his burden as non-movant, then he requests that the Court permit him the opportunity to obtain [certain] evidence."). (Doc. 16 at PageID 957).

According to plaintiff, defendants did not fully cooperate during discovery. Plaintiff argues that defendants failed to produce certain evidence, including information regarding the creation of the affidavit at issue, the template, documents related to its investigation into the affidavit, and documents demonstrating that defendants filed a similar affidavit in other cases. Plaintiff also asks for "deposition(s) to verify and understand information contained in the[se] documents." According to plaintiff, he learned of the existence of "much of" this information at

3

the Rule 30(b)(6) deposition of defendant Ogle. Attached to plaintiff's motion is a declaration from his counsel, who avers as follows:

> I believe that the additional evidence identified in the motion to which this Declaration is attached is necessary for adjudication of defendants' motion for summary judgment (Doc. 11), in the event that the Court does not deny that motion on the basis of information presented in plaintiff's opposition to said summary judgment motion (Doc. 15). The discovery that I currently believe to be necessary for this purpose, and the reasons for such need, are described in the motion to which this Declaration is attached as an exhibit, and such description is incorporated herein.

(Doc. 16-3 at Par. 3).

In response, defendants argue that plaintiff's Rule 56(d) motion cannot be granted because plaintiff opposes their summary judgment motion. According to defendants, the rule does not allow this "alternative" approach. Defendants further argue that plaintiff fails to identify any specific discovery requests at issue. Moreover, according to defendants, they did in fact provide plaintiff with the template used to create the affidavit, as well as the underlying data. Defendants further claim that plaintiff had a full and fair opportunity to depose defendant Ogle. In addition, defendants point out that they never indicated that the error occurred only in this case. Thus, plaintiff's argument to the contrary is a red herring. According to defendants, any investigation that occurred after litigation began is not discoverable. Defendants note that they provided plaintiff with a privilege log.

Upon review, plaintiff's Rule 56(d) motion is denied. That rule provides as follows:

> **When Facts Are Unavailable to Nonmovant**. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery;

4

(3) issue any other appropriate order.

As an initial matter, the Court finds that plaintiff has not shown by declaration that "it cannot present facts essential to justify its opposition." Rather, on its face, counsel avers that it has presented facts that it believes are sufficient to deny defendant's summary judgment motion. It is only in the event the Court disagrees with plaintiff that he seeks to obtain more evidence. Rule 56(d), however, is not designed to allow parties to preview and oppose a motion for summary judgment and, in the event they lose, ask for more discovery.

In this case, plaintiff indicates that defendant did not provide certain items during the discovery process. According to plaintiff, much of this came to light during the deposition of defendant Ogle.

In order to determine whether to defer or deny a pending summary judgment motion under Rule 56(d), courts look to the following factors:

(1) When the nonmovant learned of the issue that is the subject of the desired discovery;

(2) Whether the evidence would have changed the Court's ruling;

(3) The length of the discovery period;

(4) Whether the movant was dilatory in his discovery efforts; and

(5) Whether the nonmovant was responsive to discovery requests.

*CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008)).

Upon review, the Court finds that balance of the factors weighs in favor of denial. This case was filed in state court on June 10, 2022. After removal of this matter, the Court held a case management conference on September 28, 2022, and set a discovery cutoff of December 28, 2021. Thereafter, the parties jointly moved for a 30-day extension of the deadline, which the

5

Court granted to January 31, 2022. At no point to plaintiff seek any further extensions. According to plaintiff, the issues arising in this dispute came to light during the deposition of defendant Ogle. That deposition occurred on January 25, 2022, after which plaintiff began emailing defendant regarding the alleged deficiencies. But, at no point did plaintiff file a motion to compel with the Court. The local rules require that all discovery disputes must be filed no later than ten days after the close of discovery. *See*, L.R. 37.1(b)("No discovery dispute shall be brought to the attention of the Court, and no motion to compel may be filed, more than ten (10) days after the discovery cut-off date."). As such, factors one, three, and four weigh strongly in favor of denying plaintiff's Rule 56(d) motion. Plaintiff learned of the issues during the discovery period, yet did not file a motion to compel. The Court allowed four months of discovery, and plaintiff did not seek a second extension of the discovery deadline.

      Although plaintiff argues that defendants failed to provide certain information during discovery, defendants respond that some of the information was, in fact, provided. By way of example, defendants indicate that they provided the template and underlying data to plaintiff. Defendants further indicate that documents evidencing any investigation done during the course of this litigation are identified on the privilege log. And, regarding evidence of other lawsuits involving the same signature block, plaintiff acknowledges that he presented evidence of five other cases in his brief in opposition to the summary judgment motion. Accordingly, factor five is neutral, at best.

      The Court finds that the second factor does not weigh in plaintiff's favor. Plaintiff does not explain how the evidence would have changed the Court's ruling. In fact, plaintiff opposes the motion for summary judgment. There is no argument as to how any additional information

6

would have swayed the Court in a different direction. Rather, plaintiff argues that the facts he has presented are sufficient to defeat defendants' motion. Only in the event the *Court* deems it necessary, does plaintiff seek to introduce further evidence.

The Court will not permit a nonmovant to preview a summary judgment motion after having failed to follow the local rules regarding discovery disputes. Plaintiff had ample time for discovery and knew of the alleged shortcomings in the production with sufficient time left to file a motion to compel. Plaintiff chose not to, and now argues in the alternative that he *might* need additional evidence to defeat the summary judgment motion. The Court finds that plaintiff's Rule 56(d) motion is not well-taken.

B. Summary judgment motion

1. Standard of review

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

2. Count one

Count one alleges a number of violations of the FDCPA. Plaintiff alleges that defendants violated the FDCPA by falsely representing the ownership of the debt in the state court lawsuit, filing a false affidavit, reporting inaccurate credit information, and filing a time-barred lawsuit in state court.

To prevail on his FDCPA claim, [plaintiff] must establish that (1) he is a 'consumer'

8

>under the FDCPA, (2) the 'debt' arises out of transactions entered primarily for personal, family or household purposes, (3) defendants are 'debt collectors' as defined by the FDCPA, and (4) the debt collectors violated a provision of the FDCPA in attempting to collect a debt.

*White v. Universal Fidelity, LP*, 793 Fed. Appx. 389, 391 (6th Cir. 2019).

The parties do not dispute the first three elements of the claim. Defendants argue, however, that they did not violate a provision of the FDCPA in connection with collection efforts taken in relation to plaintiff's loan.

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Debt collectors may also not "use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. "Because it is a remedial statute, we construe the FDCPA broadly and determine whether a statement violates the FDCPA by applying the least-sophisticated-consumer standard." *White*, at 391 (citing *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448-50 (6th Cir. 2014)). "This standard recognizes that the FDCPA protects the gullible and the shrewd alike while simultaneously presuming a basic level of reasonableness and understanding on the part of the debtor, thus preventing liability for bizarre or idiosyncratic interpretations of debt collection notices." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014).

    a. ownership of the debt

Defendants argue that the Kowalik affidavit plainly disclosed that UHG I owns the debt. In response to defendants' motion, plaintiff argues that, contrary to defendants' assertion, there is no evidence that UHG I owned the debt at issue. Defendants provide the Court with the Bill of

Sale, pursuant to which UHG I purchased certain debts owed by Cross River Bank. (Doc. 11-2 at PageID 130). Plaintiff's debt is identified in the attachment as one of the debts UHG I acquired. Defendants also point to the affidavit of defendant Ogle, who avers that "UHG I had purchased the debt at issue from Cross River Bank...," and "the affidavit [attached in the state court lawsuit] properly identified UHG I as the current account holder, and Cross River Bank as the original creditor." (Doc. 11-2 at Pars. 4, 10).

In response, plaintiff argues that the Court cannot consider the Bill of Sale because defendants failed to authenticate it. Plaintiff also argues that there is no indication that the "attachment" is part of the bill of sale. There is no heading on the attachment, and it would be pure speculation that the last two pages are connected to the first page. Plaintiff further argues that the Court should not consider Ogle's affidavit. According to plaintiff, although defendant Ogle is UHG I's attorney, the facts contained in the affidavit are not based on personal knowledge.

Upon review, the Court agrees with plaintiff. Defendants must present authenticated documents in support of their motion. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009)("It is also the basis of this court's repeated emphasis that unauthenticated documents do not meet the requirements of Rule 56(e)."). Simply put, the Bill of Sale is not authenticated. Defendants, although claiming that plaintiff's argument is "disingenuous, inconsistent with the facts..., and is a poor distraction," fail to provide the Court with admissible evidence supporting this critical fact. There is no testimony whatsoever regarding the Bill of Sale. Accordingly, the Court cannot consider the Bill of Sale in determining whether the state court action properly identified the correct creditor.

10

The Court further agrees with plaintiff that defendant Ogle's affidavit is not based on personal knowledge. Despite her statements to the contrary, she is not competent to testify as to the underlying facts concerning the ownership of the debt. The fact that she may represent UHG I, does not mean that she may testify as to all facts known to UHG I. There is no indication that defendant Ogle was involved in the alleged sale of the debt from Cross River Bank to UHG I. Testimony from an attorney about facts repeated by the client is not based on personal knowledge and would constitute hearsay. Otherwise, the only evidence needed in connection with a summary judgment motion would consist of competing attorney affidavits disclosing all of the relevant facts each attorney learned from their respective clients. Accordingly, the Court will not consider defendant Ogle's statements regarding the ownership of the loan.

Defendants point to plaintiff's testimony wherein he acknowledges that he took out a loan in the amount of $30,000 from Best Egg. (Doc. 11-1 at PageID 113). But, of course, this testimony in no way supports a finding that UHG I owns this loan. Defendants also argue that a letter to plaintiff discloses that Cross River Bank sold the loan to UHG I. Again, however, this document is not authenticated. It appears to be a letter from "Best Egg" informing plaintiff that the loan had been sold. But, plaintiff has no recollection of having received the letter, and defendant produces no testimony from Best Egg regarding the creation or transmission of the letter. Accordingly, the Court will not consider the letter in connection with defendants' motion.

On the other hand, plaintiff notes that the complaint and affidavit filed in state court action are inconsistent. The Court agrees. Although defendants argue that UHG I is the owner of the debt, the plaintiff in the state court action is identified as UHG I, "as assignee of Mallete Servicing, LLC as servicer of Cross River Bank." Therefore, it is not clear whether the

11

complaint is brought by UHG I as the replacement *servicer* on behalf of Cross River Bank, or as the creditor.

Defendants acknowledge that misstating the ownership of the debt at issue may be a violation of the FDCPA. Although dismissal of the claim may be warranted if the creditor establishes that it owned the debt, defendants fail to present admissible evidence on this point. Accordingly, summary judgment is not warranted.

    b. the affidavit

Plaintiff argues that the affidavit filed in connection with the state court collection matter is misleading and, therefore, violates the FDCPA. According to plaintiff, the affiant, *i.e.*, Kowalik, filed an affidavit in which she avers that she is the keeper of the books and records of UHG I. She signs the affidavit, however, as an agent of Cross River Bank. To establish that the error occurred in the signature line, defendants again rely on the affidavit of defendant Ogle. She avers that "all of the factual statements in the affidavit are true and accurate, including the fact that Ms. Kowalik serves as a bookkeeper for [] UHG I." Plaintiff again challenges the admissibility of these statements on the basis that defendant Ogle lacks personal knowledge. Defendants respond that Ogle is competent to testify to these issues because she is an attorney for UHG I. The Court agrees with plaintiff. Although it is possible that in certain instances an attorney may gain personal knowledge about a client's business through interactions with the client, there is no such indication in defendant Ogle's affidavit. Defendant Ogle does not indicate that she had any input in the preparation of the affidavit. Nor does she aver that she knows Ms. Kowalik or has worked directly with her on any occasion. Defendant Ogle does state that she reviewed the affidavit. This standing alone, however, does not create personal

12

knowledge regarding Kowalik's job duties. Defendants provide no testimony from Ms. Kowalik or any other individual at UHG I. Therefore, the Court cannot say that the error occurred in the signature block. As a result, because there is insufficient evidence to say where the error occurred within the affidavit, the Court denies defendants' request fo summary judgment. Without a resolution of this issue, the Court simply cannot say whether the error amounts to a "misleading representation" under the FDCPA.

Defendants further claim that, even if the affidavit contains a misleading misrepresentation, defendants are entitled to avail themselves of the "bona fide error defense." Section 15 U.S.C. § 1692k(c) provides as follows,

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

Defendants argue that there is no evidence that they intentionally failed to alter the signature block. Defendants also claim that they have reasonable procedures in place to avoid the typographical error at issue. In response, plaintiff argues that the evidence cited by defendants to describe the error at issue and the "reasonable procedures" is vague. Plaintiff notes that defendants' arguments and evidence are couched in ambiguous terms. Plaintiff also points out that the same error occurred in a number of different cases filed in state court. Because it is not an isolated incident, defendants cannot avail themselves of the bona fide error defense.

Upon review, the Court finds that summary judgment is not warranted. Defendants attempt to provide evidence describing the procedure in place for drafting affidavits, as well as how the procedure was not followed in this case. The Court agrees with plaintiff that the

13

evidence is insufficient to warrant summary judgment.

In their brief defendants argue as follows,

> Upon investigation, defendants determined that the typographical error in the signature block was *likely* caused by a former employee, Shyenna Wheeler, who *apparently* noticed that Cross River Bank had been erroneously labeled as the current account holder/plaintiff. While the error should have been remedied by revising the spreadsheet, *it appears that* Ms. Wheeler instead attempted to revise it manually, and corrected all errors in the affidavit save for the one identifying Cross River Bank in the signature block.

(Doc. 11 at PageID 91). *See also*, Ogle Dep at 77, Doc. 21-1 (We *assume* that when Shyenna created the affidavit that it said Cross River Bank here and Cross River Bank there. And she realized that was wrong...."). The Court agrees with plaintiff that the argument and corresponding evidence is purely speculative.

Defendants argue that the affidavit is subject to two additional reviews. But the evidence cited by defendants fares no better in this regard. Defendants note that affidavits are reviewed by Jennifer Spade, a staff member who prepared the pleading. But when discussing the specifics in this case, defendant Ogle testified as follows,

> So when you look at the affidavit, what [Jennifer Spade] probably looked at was this [part of the affidavit].... So that's probably why we missed this [other part of the affidavit] because we review everything.... And [Jennifer Spade] probably saw that [two parts of the affidavit] matched, and we just missed that line [in the affidavit].

Again, defendant Ogle's testimony of the review by Jennifer Spade is purely speculative and couched in vague terms. The Court acknowledges that defendant Ogle's affidavit provides generally that defendants use a system known as CollectMax to assist with the creation of affidavits, and the affidavits then go through three levels of review. But the evidence purporting to establish that this process was followed in this case is insufficient. The Court simply cannot

14

say what occurred because there is no evidence from anyone other than defendant Ogle, who cannot identify what transpired. Accordingly, assuming *arguendo* that the error in the affidavit occurred in the signature block (as opposed to other parts of the affidavit), there is a genuine issue of material fact as to whether the error is subject to the bona fide error defense.

### c. reporting of false credit information

Defendants argue that summary judgment is warranted on this aspect of plaintiff's claim because defendants do not report credit information. In support of their assertion, defendants rely on the Ogle affidavit. Defendant Ogle avers that her law firm does not report credit information, nor does the firm provide information to anyone that reports to credit bureaus. Plaintiff offers no evidence in response. According, defendants are entitled to summary judgment on this aspect of count one.

### d. time-barred lawsuit

Plaintiff alleges that defendants violated the FDCPA because defendants filed the underlying state court lawsuit after the applicable statute of limitations expired. Defendants argue that they did not file a time-barred lawsuit. Without citing any law, defendants argue that the applicable statute of limitations is eight years. In response, plaintiff argues that the one-year statute of limitations set forth in O.R.C. § 1109.69(f) applies. In reply, defendants claim that the six-year statute of limitations set forth in O.R.C. § 2305.06 applies.

Upon review, the Court denies defendants' motion. Defendants rely on O.R.C. § 2305.06, which provides as follows,

> Except as provided in sections 126.301, 1302.98, 1303.16, 1345.10, and 2305.04 of the Revised Code, an action upon a specialty or an agreement, contract, or promise in writing shall be brought within six years after the cause of action accrued.

15

Plaintiff, however, correctly notes that O.R.C. § 1109.69(f) provides for a shorter limitations period in certain circumstances. The shorter limitations period applies if the underlying claim is dependent on the introduction of bank records. Ohio law provides that banking records must be kept for either one year or six years, depending on the type of document at issue. In the event the banking record need only be maintained for a one-year period, a corresponding one-year statute of limitations applies to the claim. The statute of provides as follows,

> (A) Unless a longer record retention period is required by applicable federal law or regulation, each bank shall retain or preserve the following bank records and supporting documents for only the following periods of time:
>
> > (1) For one year:
> > ***
> > (h) All records relating to closed consumer credit loans and discounts, after date of closing;
>
> ***
>
> (F) Any action by or against a bank based on, or the determination of which would depend on, the contents of records for which a period of retention or preservation is set forth in divisions (A) and (B) of this section shall be brought within the time for which the record must be retained or preserved.

Here, defendant Ogle testified that the state court complaint was based on an account that had been closed on September 30, 2017.[1] Defendants did not file the state court lawsuit until 2021.

Defendants argue that this section only applies to claims in which documents have been destroyed. Not so. Defendants cite to *Abraham v. Nat'l City Bank Corp.*, 553 N.E.2d 619, 621

---

[1] For purposes of this motion, defendants do not dispute that plaintiff's loan is a "closed consumer credit loan."

16

(1990) for this proposition. But, in *Bucheit Intern. Inc. v. Ameritrust Co. Nat'l Ass'n*, (6th Cir. 1997), the Sixth Circuit expressly rejected this very argument, holding that "[a]lthough *Abraham* involved the actual destruction of bank records, the *Abraham* court did not interpret the statute to require actual destruction of documents." *Id*. at *4. The Sixth Circuit went on to find that any other applicable statute of limitations, *i.e.*, O.R.C. § 2305.06, must give way to the specific statute of limitations found in O.R.C. § 1109.69(f).

Defendants point to other cases in which courts have applied the six year statute of limitations to collection actions. These cases do not involve closed consumer credit loans.[2] This fact is what triggers in the application of the one-year limitations period here. Accordingly, defendants are not entitled to summary judgment on this aspect of plaintiff's claim.

3. Count two

Count two arises under the OCSPA. Plaintiff alleges that the misconduct identified above also violates the OCSPA. In their motion, defendants assert the same arguments set forth above. Defendants' motion is denied, except to the extent plaintiff alleges that defendants' credit reporting acts violate the statute.

---

[2] The Court is greatly concerned with defendants' citation to *MTGLQ Investors, L.P. v. City of Youngstown*, 2005 WL 8170802 (N.D. Ohio March 2, 2005) and their wholesale failure to cite *Bucheit*. In *MTGLQ Investors*, the court held the precise opposite of what defendants claim. Defendants argue that *MTGLQ Investors* determined that the "failure to make timely loan payments pursuant to written contracts fall[s] squarely within R.C. 2305.06..." But, the court, after thoroughly analyzing *Bucheit*, held that the limitations period set forth in O.R.C. § 1109.69(f) applies to claims based on bank records. Moreover, after having read *MTGLQ Investors*, defendants knew of binding Sixth Circuit precedent, yet failed to cite it to this Court.

17

4. State law claims

Plaintiff asserts claims for negligence, fraud, and violation of criminal statutes. According to defendants, these claims fail because they are, in actuality, third-party legal malpractice claims. Defendants claim that privity is lacking between themselves and plaintiff. In response, plaintiff argues that the claims at issue are atypical of attorney malpractice claims because there are underlying statutory duties owed by defendants to plaintiff. Plaintiff further argues that fraud and "criminal violations" are intentional acts of misconduct, not legal malpractice claims. Defendants respond that there is no evidence that they acted intentionally.

Upon review, the Court find that summary judgment is warranted as to the state law claims. Under Ohio law, attorneys are immune from claims brought by third-parties with limited exception. The court in *Dykes v. Gayton*, 744 N.E.2d 199, 200 (Ohio Ct. App. 2000) held as follows,

> The trial court correctly cites the Ohio Supreme Court's decisions of *Scholler v. Scholler* 462 N.E.2d 158 (1984), and *Simon v. Zipperstein*, 512 N.E.2d 636 (1987), as the controlling authority, which supports the proposition that an attorney is immune from liability to third-parties arising from his/her performance as an attorney in good faith on behalf of his/her client unless the third-party is in privity with the client or the attorney acts with malice. We are compelled to affirm the trial court's decision pursuant to that same authority.

Immunity will attach, therefore, unless there are "special circumstances such as fraud, bad faith, collusion or other malicious conduct which would justify departure from the general rule." *Simon*, 512 N.E.2d at 638.

Here, plaintiff argues that there is fraud and intentional conduct on the part of defendants such that immunity does not attach. In support of his position, plaintiff notes that defendants intentionally changed the name of the creditor in one location in the database, but did not do so in

18

other places. This resulted in the creation of a false affidavit. According to plaintiff, defendants did not make this change "by accident," rather, an individual manually entered the change.

Upon review, the Court finds that this evidence is insufficient to create a genuine issue of material fact as to whether defendants acted fraudulently, maliciously, or in bad faith as required to defeat attorney-immunity to third-parties. An intentional act, standing alone, does not satisfy this requirement. The question is not whether the act was intentional as opposed to accidental. Instead, the focus is on the *reason* the party undertook the intentional act. Here, there is no evidence suggesting that the individual changed the name of the creditor in only one spot in the computer in a fraudulent, malicious, or bad faith manner. Thus, plaintiff's evidence falls short of creating a genuine issue of material fact, and the general immunity rule precludes the state law claims.

Despite the foregoing, plaintiff argues that a statutory duty can be substituted to support the negligence claim. Even if the immunity rule would not apply in such a situation, the Court nonetheless rejects plaintiff's argument. Although a duty of care can be established through a statute, the fact that a certain statute may create liability for prohibited acts does not *automatically* translate into a duty for purposes of a negligence claim. Plaintiff cites no law from Ohio, the Sixth Circuit, or the Supreme Court that has established a duty of care on the part of attorneys representing creditors through either the FDCPA or the OCSPA. Because plaintiff fails to satisfy the duty element of a negligence claim, defendants are entitled to summary judgment.

**CONCLUSION**

For the forgoing reasons, plaintiff's Rule 56(d) motion is DENIED, and defendants' motion for summary judgment is GRANTED in PART and DENIED in PART. Defendants are

entitled to summary judgment with respect to counts one and two to the extent they are based on credit reporting. Defendants are also entitled to summary judgment on counts three, four, and five. Defendants' motion is DENIED in all other respects.

      IT IS SO ORDERED.

Dated: 5/17/23

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge